(Nos. 18481, 18505.—

Mary A. Bergman *et al.* Defendants in Error, *vs.* Sarah J. Rhodes, Plaintiff in Error.

*Opinion filed February 20, 1929—Rehearing denied April 3, 1929.*

138

■■■■■■

VAUGHN & NEVINS, and BISHOP & CLAIBORNE, for plaintiff in error.

KNOTTS & KNOTTS, and RINAKER & RINAKER, for defendants in error.

Mr. COMMISSIONER PARTLOW reported this opinion:

Defendants in error, Mary A. Bergman, individually and as trustee under the will of Henry Brayford, deceased, Theresa M. Pratt and Virginia E. Durston, filed their bill in the circuit court of Macoupin county against Sarah J. Rhodes, plaintiff in error, and her husband, Frank Rhodes. The bill alleged the death of Brayford on December 2, 1901, the probate of his will, by which he disposed of 652 acres of land in Polk township and 80 acres of land in Carlinville township, both in Macoupin county, 93 acres in Madison county, and a lot in Carlinville. He left surviving him Mary A. Brayford, his widow, who later died intestate, and four daughters, Sarah J. Rhodes, Mary A. Bergman, Theresa M. Pratt and Virginia E. Durston as his only heirs-at-law and devisees under his will. The will devised and bequeathed the entire estate in trust to Mary A. Brayford, Sarah J. Rhodes and Mary A. Bergman and prescribed

their duties as trustees until the death of the widow. The bill was filed for the purpose of carrying into effect the following provision of the will: "I direct that at the death of my wife, Mary A. Brayford, or as soon thereafter as practicable, the surviving trustees, acting under this will, shall sell and convey by good and sufficient deeds, all the said remainder residue of my estate in such manner and on such terms as they may deem best, and shall divide the net proceeds of said sale equally among my said daughters. In the event of the death of any of my said daughters before the distribution of said proceeds of said sale, leaving bodily descendants, then I direct that the share of such deceased daughter be divided equally among her said bodily descendants."

Plaintiff in error appeared and by agreement joined with defendants in error in an *ex parte* bill, in which they alleged that all of the parties were of the opinion that a sale of the real estate as provided in the will would result in a sacrifice of their respective interests because the prices of all farm lands were low and the market for the same poor; that the land, if sold at that time, would not realize a price actually representing its value; that because of these unsatisfactory conditions the parties would sustain a loss if the real estate was sold at public auction; that all of the parties had decided to exercise their right of election, each taking her one-fourth share in land instead of money, and that they waived the right to a sale by the trustees. The bill prayed that a decree be entered confirming their election to take their shares in the land, that they be decreed to be the owners thereof as tenants in common, that the land be partitioned in kind, and that commissioners be appointed to make partition and assign to each the full equal one-fourth part of the land in severalty. There was also a prayer for general relief.

A decree was entered which found that each of the parties had agreed that the land should not be sold by the trus-

tees but in lieu thereof they had elected to take their respective shares in land instead of money; that the election was reasonable and was approved by the court; that a sale as provided in the will would result in a sacrifice of the property and great loss to each of the parties interested. Commissioners appointed to make partition in accordance with the prayer of the bill divided the land in kind among the four sisters and placed a valuation upon each tract. They found that the value of the land assigned to Sarah J. Rhodes was $1431.25 in excess of an equal one-fourth share of the total value of all the land, and they recommended that she pay to Virginia E. Durston $743.75, to Mary A. Bergman $318.75 and to Theresa M. Pratt $368.75 in the nature of owelty, in order to equalize the distribution of the estate. The total value of the estate as fixed by the commissioners was $49,475. No objections were filed when this report was presented in court and it was confirmed by a decree on June 26, 1925. On September 10, 1925, during the same term, a motion was made by defendants in error to set aside this report and decree. The motion was supported by affidavits relative to the fairness of the division, the correctness of the valuations and the legality of the action of the commissioners in fixing owelty. Plaintiff in error filed counter-affidavits. Upon a hearing on these affidavits the court vacated the decree confirming the partition and the report of the commissioners on the ground that the commissioners had not made an equal partition and that they acted without authority in fixing owelty, and other commissioners were appointed. The commissioners last appointed made a report that the premises were not susceptible of division and made an appraisal of the land. Objections were filed to the report, and upon a hearing the objections were overruled, the report was approved and a decree of sale was entered. An appeal was prosecuted to the Appellate Court for the Third District, where the decree was reversed and the cause remanded, with direc-

tions to sustain the objections to the report of the commissioners and to enter an order appointing new commissioners to make partition in conformity with the decree. Both sides filed petitions for *certiorari* in this court, which were granted.

It is the contention of plaintiff in error that the *ex parte* amended bill was filed by agreement; that all the proceedings after the amended bill were by consent of all the parties; that the decree of partition and the decree approving the first report of the commissioners were consent decrees; that the chancellor was in error in sustaining the objections to the first report of the commissioners, in setting aside the decree of partition entered thereon, in appointing new commissioners, in overruling the objections to the second report of commissioners and in entering the decree of sale; that the Appellate Court was in error in remanding the case with directions to sustain the objections to the last report and to appoint new commissioners and make division in conformity with the decree for partition; that the Appellate Court should have reversed the decree with directions to sustain the objections to the last report of the commissioners, overrule the objections to the first report of the commissioners and sustain the decree of partition as originally entered. The contention of defendants in error is, that the Appellate Court did not err in any of the respects complained of by plaintiff in error but that it did err in holding, in effect, that the practice in this case should be governed by the Partition act, in holding that the decree of partition rested upon a conclusive presumption established by the allegations of the amended bill that the premises are equitably divisible in kind among the owners, in holding that the commissioners were appointed to make partition in kind, only, in holding that the objections to the report of the second commissioners should be sustained and the report set aside, and in holding that the decree of sale was improperly entered and should be reversed.

Where a testator devises land to be sold and the proceeds distributed, if the devisees are all *sui juris* they may by concurrent action elect to take the real estate, as such, in place of the proceeds, and the converted property is thereby restored in equity to its original state. (*Hoopeston Public Library* v. *Eaton*, 283 Ill. 449; *Pasquay* v. *Pasquay*, 235 id. 48; *Darst* v. *Swearingen*, 224 id. 229.) The character of the bequest cannot be changed from money to a division of land except with the concurrent action of all of the parties interested, since each has a separate right to insist upon the bequest as provided by the will. (*Bouslough* v. *Bouslough*, 306 Ill. 24.) We are of the opinion that the record bears out the contention of plaintiff in error that the filing of the amended bill, and the proceedings taken thereunder, were by agreement of the parties and their attorneys and that the decree granting the prayer of the amended bill and the decree approving the report of the first commissioners were, in effect, consent decrees. Parties who are competent to contract may agree to the rendition of a decree in respect to any right which may be the subject of litigation. When such a decree is entered it is a decree by consent. As a general rule, such a decree should show upon its face that it was entered by consent, (5 Ency. of Pl. & Pr. 961,) but it has been held by this court that such a showing in the decree is not indispensable and that an agreement may be shown by other evidence which does not contradict the record but is consistent with it. (*Krieger* v. *Krieger*, 221 Ill. 479; *Armstrong* v. *Cooper*, 11 id. 540.) The last case is one of the leading cases in this State and has been referred to and followed by this court on several occasions. In that case an agreement was made between counsel representing the respective parties that certain amendments should be made to the bill and the complainant should be permitted to take a decree under the bill as amended. It was held that the decree taken was a consent decree, and such consent could

be shown by evidence which did not contradict the record. A consent decree is not a judicial determination of the rights of the parties. It does not purport to represent the judgment of the court but merely records the agreement of the parties. A decree so entered by consent can not be reviewed by appeal or writ of error. (*Paine* v. *Doughty,* 251 Ill. 396; *Galway* v. *Galway,* 231 id. 217.) It can only be set aside by an original bill in the nature of a bill of review. (*Hohenadel* v. *Steele,* 237 Ill. 229.) In *Hungarian Benevolent Society* v. *Aid Society,* 283 Ill. 99, it was held that where neither party objected to a master's report, a decree in accordance with the master's finding, which was approved before entry by the O. K. and signature of counsel for both sides, became a consent decree; that where an attorney is the counsel of record for a client, his agreement in the conduct and management of the litigation must be considered as the agreement of his client, and if any of his acts are without sufficient authority as between him and his client the remedy of the client is against the counsel.

In the original bill three of the sisters were complainants and one of them was a defendant. After it was filed all of the parties agreed upon an *ex parte* proceeding and an amended bill in which all joined in a prayer not to sell the land either under the will or in a partition proceeding but to set off the land in kind. It prayed for specific relief. The fact that the bill contained a prayer for general relief did not change the character of the proceeding and make it a bill for partition, as contended by defendants in error. The nature of the bill is to be determined by all of its allegations, and when they are considered as a whole it must be construed as a bill for the division of the property in kind and not one praying for a sale. The decree entered upon the bill as amended followed its allegations and was a decree for division and not one authorizing a sale. The fact that the decree appointing commissioners provided that

in case the commissioners found that the premises could not be divided they appraise the land did not justify an order of sale when the whole record is considered. The decree as entered was final, no appeal was prosecuted from it, it fixed the rights of the parties and the basis of the action of the commissioners, and its validity is not now before this court. (*Hardin* v. *Wolf,* 318 Ill. 48; *Clawson* v. *Ellis,* 286 id. 81; *White* v. *VanPetten,* 280 id. 215; *Lantz* v. *Lantz,* 261 id. 194.) The court entered the exact decree which all of the parties agreed should be entered. It recited that all of the parties had consented to the kind of a decree to be entered. It was therefore, in effect, a consent decree and must be construed by the rules of law applicable to such a decree. After that decree was entered the parties agreed upon the first set of commissioners and they were appointed according to the agreement. The commissioners went upon the land and spent four days trying to determine the valuations of the respective tracts and to make a partition. They called to their assistance the attorneys who represented all of the parties, and after due consultation between the commissioners and all of the attorneys the report was agreed upon and it was presented to the court as the agreement of the parties. Defendants in error claim they did not have any knowledge of the contents of the report before it was filed, but they were represented by their counsel and no objections were made. The report was approved and a decree was entered fixing the rights of the parties as found by the commissioners. Seventy-six days later defendants in error filed objections to the report and asked that it be set aside. It appears that the attorney who represented them in this proceeding had represented them for many years prior thereto. He filed the original bill, he helped make the agreement which resulted in the amended bill, he was present and helped make the report of the commissioners, and he presented the report in court as the agreement of the parties. After the report was filed defendants

in error employed other counsel, who presented their objections to the report and represented them during the hearing thereon. The decree confirming the report of the first commissioners, under the law and the facts, was, in effect, a consent decree, it was binding upon the defendants in error, and they had no right to have it set aside.

The affidavits on which the objections to the report of the first commissioners were heard show a wide variance in the opinions of the witnesses with reference to values of the various tracts of land. An examination of the affidavits with reference to one tract will be sufficient to show the wide range of opinion as to all tracts. Defendants in error presented fifteen affidavits with reference to the value of the premises set off to plaintiff in error, a portion of which comprised Beaver Dam lake. The values of this land ranged from $60 to $125 per acre, with an average of $97 per acre. Plaintiff in error presented twenty-four affidavits, in which the values ranged from $35 to $60 per acre, the average being $41. The commissioners found that the various pieces of this land were worth from $45 to $60 per acre, with an average of $46.36 per acre. The appraisal of all of the land as made by the second set of commissioners was only about ten per cent less than the appraisal made by the first set of commissioners. These various pieces of land are of different kinds and qualities. The evidence as to values was the mere opinions of the witnesses. It is only natural under the facts in evidence that there should be considerable difference of opinion as to the value of the various pieces of land, but when all of the evidence is considered it was not sufficient to justify setting aside the first report of the commissioners on the ground that there was any marked inequality in the division of the property. On the contrary, the preponderance of the evidence on this point sustains the report of the commissioners.

A court of equity may decree a pecuniary sum as owelty in order to equalize the shares of the parties in a partition. (*Ames* v. *Ames,* 160 Ill. 599; *Field* v. *Leiter,* 117 id. 341; *Cooter* v. *Dearborn,* 115 id. 509.) The power to do so is in the court and not in the commissioners. Before an unequal partition can be made and equalized by awarding owelty it must be so ordered by the court, and where the parties do not agree the amount must be fixed and determined by the court. (*Stortz* v. *Ruttiger,* 249 Ill. 494.) If in this case the division had not been agreed upon and proper objections had been filed in apt time it would have been the duty of the chancellor to sustain the objections to the report of the first set of commissioners. The parties had the right, however, to agree on any kind of a decree they saw fit, and if they presented a report to which they agreed they are in no position now to complain that the commissioners recommended owelty. Under all the facts in evidence the decree upon the report of the first commissioners made a fair and just division of the property, defendants in error agreed to it, and they have no cause for complaint.

The judgment of the Appellate Court and the decree of the circuit court will be reversed and the cause remanded to the trial court, with directions to vacate the decree of sale, to vacate the second order appointing commissioners, to sustain the objections to the last report of the commissioners, to overrule the objections to the first report of the commissioners and the decree thereunder, and to make partition as provided in the decree approving the report of the first set of commissioners.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*