CAROLE SLAVIS, Plaintiff-Appellant, *v.* GERALD SLAVIS, Defendant-Appellee.

(No. 57011;

First District (1st Division)—June 18, 1973.

Henry A. Kalcheim and Bernard Hammer, both of Chicago, for appellant.

L. Louis Karton, of Chicago, for appellee.

Mr. JUSTICE EGAN delivered the opinion of the court:

In September, 1968, the plaintiff, Carole Slavis, filed a petition for the enforcement of arrearage of alimony and child support granted pursuant to a decree for divorce as later modified. After a trial the court denied the plaintiff's petition on the ground that "by her actions, [she] knowingly waived her rights to collect alimony and by her conduct, assumed the responsibility to support her own child and is thereby estopped from asserting her rights under the original Court Order for child support and alimony." The record before us does not contain a stenographic transcript of the testimony heard but consists of, in addition to the pleadings in the circuit court of Cook County, pleadings and orders from proceedings in California and New York, various letters, principally between attorneys, memoranda of law submitted by both parties, and the final order of the trial judge which contained specific findings of fact.

■■ The defendant correctly asserts that the absence of a report of proceedings precludes a review of the trial court's determination of fact (*Lukas v. Lukas*, 381 Ill. 429, 45 N.E.2d 869), but that does not mean that a reviewing court may not question whether the factual findings support the legal conclusions of the trial court. See *Continental Paper Grading Co. v. Fisher*, 3 Ill.App.2d 118, 120 N.E.2d 577.

The plaintiff and the defendant, Gerald Slavis, were married in May, 1960, and divorced in July, 1964. They had one child, Ricky, who was three years old at the time of divorce. The decree incorporated a property settlement agreement, under which the defendant agreed to pay $12.50 per week for permanent alimony. The first payment was to begin upon the entry of the decree and end on the remarriage of the wife or death of the wife or husband. The agreement also provided that the husband pay $50.00 per week for the support of the minor child and $595.00 for arrearages due for alimony and child support. The plaintiff was given custody of the child, and the defendant had visitation rights of one day each weekend from 12 noon to 7 P.M., the right to take the child for the weekend four times a year and the right to take the child for one week during the summer vacation. The defendant further agreed to keep his life insurance policy in full force and effect with the child as beneficiary and to maintain Blue Cross and Blue Shield policies to cover the child.

In March, 1965, the defendant filed a petition in New York, where both parties were residents, alleging, in substance, that his wife had taken his son to Jamaica in November, 1964, without notice to him.

The New York court ordered the plaintiff to make the child available there for visitation purposes. She never complied with that order. In September, 1968, a California court, pursuant to an action brought by the defendant, modified the Illinois decree and, in compliance with the stipulation of the plaintiff and defendant, *terminated alimony as of December 28, 1967, and reduced child support payments to $125.00 per month effective August 30, 1968,* to continue until further order of the court or until the child reached majority. The defendant was further obligated to carry the child as a beneficiary on his medical and hospital policies. The court modified the visitation rights of the defendant, who was to bear all transportation expenses for visitation and was to forward to the wife appropriate tickets to transport the child from his place of residence to wherever the plaintiff was to meet him. The plaintiff was restrained from removing the child from California except for periods not to exceed a month for vacation and ordered to advise the defendant within one week of any change of address of the child's residence. The California court specifically found that it was without jurisdiction to deal with the arrearage on alimony or child support.

After the hearing on the petition before us, the trial court entered the order denying the plaintiff's petition and included the specific findings of fact which, in pertinent part, are as follows: ·

" * * *

1. That the evidence was that both plaintiff and defendant removed their permanent residence from Illinois to the State of New York at about the time that the entry of the Decree of Divorce herein occurred. There was no objection on the part of either party to the removal from Illinois to New York.

2. (a) The plaintiff subsequently moved to Jamaica with their minor child. At that time, the defendant was current in all his support payments. Plaintiff had been born and raised in Jamaica, although she had attended schools in the United States and had been residing here with her parents for some time before she left. She obtained a contract for employment in Jamaica. Plaintiff and defendant both testified that she told the defendant that she was leaving for Jamaica with the child. He objected and told her he would discontinue payments of alimony and child support if she left. Despite this, plaintiff moved to Jamaica. After she moved, defendant spoke by phone to plaintiff from Jamaica. Defendant then started Court proceedings in New York asking for plaintiff's return with the child and seeking visitation. Plaintiff was served by mail in Jamaica, but no appearance on her behalf was filed.

(b) An ex- parte order was entered by the New York Court on July 6, 1965, directing plaintiff to return RICKY, the minor child, to the State of New York. Defendant did not seek, nor did he receive, any order to suspend alimony and child support payments. Defendant ceased to make any payments after she left New York.

3. Defendant traveled to Jamaica in October, 1965. He met the plaintiff and her parents. He was told that RICKY was out of the city, that he could not be brought back to the city and that the defendant could travel out to the country to see RICKY. Defendant testified that he gave plaintiff a check, which she tore up. *He claimed that she said she did not want his money nor did she want him to have anything to do with RICKY. She denies this.* The father did not see RICKY in Jamaica. He consulted a solicitor and barrister in Jamaica and was advised by them that legal action to obtain RICKY's return to the United States would be of no avail. (Emphasis added.)

4. In October, 1967, defendant, in New York, learned that plaintiff had moved to Los Angeles, California, during April, 1967, some six months earlier. From the time plaintiff moved to Jamaica in 1965 until she filed an action in Illinois in 1968, plaintiff did not advise defendant of the specific whereabouts of RICKY or herself nor was *any* demand made for alimony or child support nor was there ever any communication from plaintiff to defendant that she. was in need of support for RICKY or herself. (Emphasis in Order.)

5. (a) In Los Angeles, defendant hired counsel and brought an action for change of custody of the minor child, RICKY. An order was entered in October, 1968, regarding the prayer for change of custody and by agreement, the Court ordered changes regarding alimony, child support and visitation, but declined to pass on the arrearage.

(b) In October, 1968, after the Los Angeles action was concluded, plaintiff secured Illinois counsel and filed the present petition to collect arrearage of unpaid alimony and child support.

6. The Court finds that plaintiff, by her actions, knowingly waived her rights to collect alimony and by her conduct, assumed the responsibility to support her own child and is thereby estopped from asserting her rights under the original Court order for child support and alimony.

\* \* \*

IT IS, THEREFORE, HEREBY ORDERED that plaintiff's

petition for child support and alimony arrearages, appointment of a sequestrator, restraining orders and other relief be and the same is hereby denied.

＊　＊　＊　”

An examination of the authorities of this State reveals abundant and consistent authority for the proposition that a violation of the visitation terms of a divorce decree by the mother will not excuse the father's failure to comply with the alimony and child support terms. (*Metcoff v. Metcoff*, 4 Ill.App.3d 160, 280 N.E.2d 572; *Stark v. Stark*, 131 Ill.App.2d 995, 269 N.E.2d 107; *Wilson v. Wilson*, 122 Ill.App.2d 142, 257 N.E.2d 810; *Lewis v. Lewis*, 120 Ill.App.2d 263, 256 N.E.2d 660; *People ex rel. Hartshorn v. Hartshorn*, 21 Ill.App.2d 91, 157 N.E.2d 563; *Trimble v. Trimble*, 16 Ill.App. 2d 408, 148 N.E. 2d 612; *Hurt v. Hurt*, 351 Ill.App. 427, 115 N.E.2d 638; *Shuff v. Fulte*, 344 Ill.App. 157, 100 N.E.2d 502; *Kemp v. Kemp*, 332 Ill.App. 432, 75 N.E.2d 385.) These cases have also consistently held that past-due installments of support are a vested right, and a court has no authority to modify them. (See also *Gregory v. Gregory*, 52 Ill.App.2d 262, 202 N.E.2d 139.) The defendant recognizes this rule but asks that we examine it "in light of contemporary concepts on the obligations of husband and wife." After this case was decided, that same request now advanced by the defendant was made in *Stark v. Stark*, 131 Ill.App.2d 995, 998, 269 N.E.2d 107. The court pointed out in rejecting the defendant's argument:

"It is one of the sad but true facts of the current time that children become the innocent pawns in the divorce chess game. In order to obtain a divorce, the parties will promise almost anything by way of child support or visitation. After the fact of divorce, and generally after remarriage, efforts commence to scale down these promises. If the law were to tolerate retroactive limitation, nothing could prevent a party from promising twice or three times his annual income as child support or alimony to soften resistance to obtaining a divorce with the sure and certain knowledge that the troublesome financial details could be worked out by hindsight. For better or for worse, the policy of the law and of the State is to preserve marriage (*Stanard v. Stanard* (3rd Dist. 1969), 108 Ill.App.2d 240, 247 N.E.2d 438) and one means of implementing this policy is to insure that obligations arising out of its dissolution are fixed and determinable. The courts of this state are heavily burdened enough with litigation growing out of petitions for rule and petitions for modification without adding to that burden petitions for retroactive modification. If defendant's theory were to prevail, no divorce decree containing

alimony or support provisions would ever be final in the true sense, but would be like Mr. Justice Roberts' complaint about the decisions of the United States Supreme Court: ' * * * a restricted railway ticket, good for this date and this trip only * * * .' "

We have re-examined the rule and adhere to the unchanged precedent of many years. We are not persuaded to hold otherwise because, as the defendant argues, section 19 of the Divorce Act provides that a wife may be ordered to pay alimony and child support and the 1970 constitution provides that "equal protection of the laws shall not be denied or abridged on account of sex."

■■ The defendant argues further that the plaintiff's claims are barred under the doctrine of equitable estoppel, citing *Anderson v. Anderson*, 48 Ill.App.2d 140, 198 N.E.2d 342. "Equitable estoppel may be defined as the effect of the voluntary conduct of a party whereby he is absolutely precluded from asserting rights which might otherwise have existed as against another person who has, in good faith, *relied upon such conduct and has been led thereby to change his position for the worse*, and who on his part acquires some corresponding rights." (ILP, Estoppel sec. 22.) Contrary to the defendant's argument, reliance on the conduct of another by a party to his detriment is an essential element of equitable estoppel. (*Hickey v. Illinois Central R.R. Co.*, 35 Ill.2d 427, 447, 220 N.E.2d 415.) In the *Anderson* case, the father had executed a consent to the adoption of the child by his former wife's new husband in return for a promise to require no further child support payments. The adoption proceedings, unknown to him, were never filed. The appellate court reversed his contempt conviction for failure to pay and remanded the case for determination whether the plaintiff was entitled to a money judgment. The court pointed out that the plaintiff conceded that she had a vested right "unless estopped to assert her right." Most important, the evidence in that case showed that the father did rely on the promise of the mother by executing the adoption agreement, thus surrendering a legal right. See also the appeal after remand in *Anderson v. Anderson*, 63 Ill.App.2d 358, 211 N.E.2d 492.

In this case, the plaintiff informed the defendant that she was leaving for Jamaica (for understandable reasons). It was at this point that he, without legal justification, told her he would discontinue child support payments. While he sought in New York to enforce his visitation rights, he did nothing to modify his support payment. He took no steps in Jamaica to enforce or modify the decree save consulting with solicitors. The position he took later in California was precisely the same he

took in New York and Jamaica with some refinements that inured to his benefit, not to his detriment.

■■ Estoppel (or waiver) must be proved by clear and unequivocal evidence. (*Bovaird Supply Co. v. McClement,* 32 Ill.App.2d 224, 177 N.E.2d 430.) Significantly, the trial court made no finding that the plaintiff had torn up the check (the amount of which is unknown) or that she told the defendant she did not want his money. But, even if the trial court had accepted the defendant's version, those acts, performed under the special circumstances apparent, together with the fact that she did not subsequently make any demand for payment, falls short of the requirement of clear and unequivocal evidence of waiver, which is the intentional relinquishment of a known right. (*Vermilion County Prod. Credit Assn. v. Izzard,* 111 Ill.App.2d 190, 249 N.E.2d 352.) The California proceedings themselves established that the defendant never regarded her as having waived any rights.

■■ For these reasons we conclude that the plaintiff is entitled to that amount of arrearages for alimony that had accrued up to December 28, 1967, and arrearages for child support up to August 30, 1968, with interest, and for reasonable attorney's fees and expenses incurred in enforcing this arrearage. *Horwitz v. Horwitz,* 130 Ill.App.2d 424, 427, 264 N.E.2d 723.

■■ A memorandum of law submitted by the plaintiff in the circuit court shows that the trial judge refused to permit the plaintiff to file an amendment to her prayer for relief to include a prayer for an increase in child support. The notice of appeal relates only to the claim for "alimony and child support due." The plaintiff now urges that we reverse that ruling of the trial judge with directions to grant the plaintiff leave to file the petition for an increase in child support. In view of the insufficiency of the record before us, we are unable to determine the propriety of the trial court's ruling. We, therefore, decline to reverse that ruling without prejudice to the right of the plaintiff to raise the question again in the trial court in an appropriate manner.

The judgment of the circuit court is reversed and remanded with instructions to proceed to a hearing to determine the amount due to the plaintiff and to hear any other matters properly before it in a manner not inconsistent with the views expressed in this opinion.

Judgment reversed and remanded with directions.

GOLDBERG and HALLETT, JJ., concur.