LINDA HUCKABY, Plaintiff-Appellant, *v.* RONALD HUCKABY, Defendant-Appellee.

Fifth District   No. 78-556

Opinion filed August 10, 1979.—Rehearing denied September 5, 1979.

KARNS, J., dissenting in part.

John R. Sprague, of Sprague, Sprague and Ysursa, of Belleville, for appellant.

Jim D. Keehner, of Jim D. Keehner, Ltd., of Belleville, for appellee.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

In determining this appeal we are to consider the effect of an order of court, entered by agreement of the parties, absolving the father of minor children from liability for their support upon the failure of the mother to afford the father court ordered visitation privileges.

The parties were married on November 29, 1965, and, after having two children, divorced on March 16, 1973. The decree for divorce awarded the mother custody of the children, granted the father reasonable rights of visitation and ordered him to pay child support in the amount of $15 per child per week.

Installments of child support subsequently went unpaid because the father was injured and unable to work. After the filing of petitions by both parties, and the entry of interim orders thereon, the court entered an order upon an agreement of the parties on September 11, 1974, which gave the mother the right to remove the children from Illinois to California. The father was to have two weeks of visitation during the summer months and from Christmas Day to January 1, the cost of transporting the children for visitation to be shared equally. The agreement and order further provided that because of the disability of the father the child support would be allowed to accumulate until the father began to receive disability checks. Upon that event, support payments were to resume at $30 per week until the father resumed employment whereupon the payments were to be $30 per week plus $10 for the arrearage. Finally, when the father's Missouri lawsuit was settled, the arrearage was to be paid in full.

Matters apparently did not work out as contemplated in the order of September 11, 1974, each of the parties complaining of the lack of good faith and failure of performance by the other. Negotiations resulted in a written stipulation for an order which was entered by the court upon the stipulation on February 28, 1975. It provided for four weeks summer visitation of the children with the father upon at least 30 days written notice to the mother or her attorney. The second paragraph of this order stated:

> "2. In the event the plaintiff fails to allow the defendant the said summer visitation for the year 1975 or any other visitation provided for in the Decree as previously amended, the obligation on the part of the defendant to provide the child support provided

for in said Decree shall cease and determine until further Order of Court."

Again, events did not transpire as contemplated in the order with each of the parties blaming the other. However, we would observe that a fair reading of the record discloses that in April 1975 the father made a proper request for visitation in July and August 1975. Just a few days before the visitation was to begin the mother sent the children to Japan for an extended visit with her parents. She later rationalized that the father could have had visitation after the children returned but this proved to be not possible because of conflicts of the father. For this disregard of the mother she was later found to be in violation of the court's order of February 28, 1975, as we will note.

No further visitation was had following the summer of 1975, the mother stating that she tried in vain to contact the father in order to get him to receive visitation and pay support, and the father saying he was unable to find the mother in California in order to exercise his rights of visitation. No child support was paid.

On February 23, 1978, the mother filed a petition for citation for contempt, judgment for arrearages and attorney fees. Evidence established an arrearage in child support payments in the amount of $5,550. Following the hearing the trial court entered an order in which it found that the mother failed to allow visitation by the father in the summer of 1975 and therefore had violated the court order of February 28, 1975; pursuant to the order of February 28, 1975, there was no arrearage due and the father was not in contempt of court; a reasonable amount of child support would be $32.50 per week per child and $200 was a reasonable attorney fee for the mother. The court made further findings respecting future visitation rights and also found it to be in the best interests of the children, and in order to effect the father's visitation rights, that the court adopt paragraph 2 of the order of February 28, 1975. Following these findings by the court, it was ordered that the father was thereafter to pay child support of $32.50 per week per child, that specified visitation be granted the father and that the mother was awarded $200 attorney fees. Paragraphs 5 and 6 of this order provided:

"5. That if said visitation is not made for reason other than respondent's failure to supply one half of the air fare, respondent's refusal to accept the minor children, or illness of the minor children which prevents their travelling and is attested to by a letter from a licensed medical physician, the above ordered support payments shall cease until further order of Court or subsequent completed visitation.

6. That the terms and conditions of paragraph 5 shall apply to all further visitation."

Post-trial motions were filed by both parties, the plaintiff objecting to that portion of the order denying her a judgment for accrued child support payments and the defendant objecting to the amount of future support payments. The trial court denied both post-trial motions and both parties appeal. We reverse the order of the trial court as to plaintiff's appeal and affirm as to defendant's appeal.

As a point of beginning we note the following from *Slavis v. Slavis* (1973), 12 Ill. App. 3d 467, 472, 299 N.E.2d 413, 417:

> "An examination of the authorities of this State reveals abundant and consistent authority for the proposition that a violation of the visitation terms of a divorce decree by the mother will not excuse the father's failure to comply with the alimony and child support terms. [Citations.] These cases have also consistently held that past-due installments of support are a vested right, and a court has no authority to modify them. (See also *Gregory v. Gregory* (1964), 52 Ill. App. 2d 262, 202 N.E.2d 139.)"

This rule from the *Slavis* case is not, however, strictly in point here since it is concerned with that instance where a father voluntarily withholds support payments when he is denied rights of visitation. Of the same nature are the many cases cited in *Slavis*. We cite *Slavis* and the cases upon which it relies as expressive of a public policy of this State to require the continuation of support payments by a father even though he may have been deprived of court ordered rights of visitation.

The difference in this case arises from the fact that the suspension in the making of support payments is grounded upon the authority of an order of court. The order of February 28, 1975, expressly provided that if 1975 summer visitation rights were not accorded the defendant the support payments were to cease until further order.

■■ The February 28, 1975, court order arose solely as a result of an agreement of the parties and not as a consequence of an adversarial litigation process. Can such an order serve to relieve a father of his obligation to support his children even when the visitation is in fact denied? In line with other authorities we hold that it cannot.

In Illinois the obligation of a father to support his child begins when the child is born and continues during the minority of the child. (*Leland v. Brower* (1963), 28 Ill. 2d 598, 192 N.E.2d 831; *Kelley v. Kelley*, (1925), 317 Ill. 104, 147 N.E. 659.) This obligation is not affected by a decree granting a divorce and awarding custody to the wife, nor can he be relieved of it by agreement with her. *Leland v. Brower.*

In *Nelson v. Nelson* (1950), 340 Ill. App. 463, 468, 92 N.E.2d 534, 536, the court held void as against public policy an agreement between a husband and wife whereby, for a stated consideration, the husband was released from all claims for child support, the court stating:

"The obligation of the father to support his minor child is not affected by the decree granting a divorce, nor by the decree granting the care and custody of his child to his wife or some other suitable person. (*Kelley v. Kelley*, 317 Ill. 104.) The duty of a parent to support his minor child arises out of a natural relationship. (*Dwyer v. Dwyer*, 366 Ill. 630.) And the claim for support of children is one which transcends any contractual obligation. (*Keller v. Keller*, 284 Ill. App. 198.)"

■■ The fact that the agreement for absolution was adopted by the court and incorporated in its order does not serve to enhance its legal viability or add to its import. It has often been stated that a consent judgment or order is not a judicial determination of the rights of the parties, nor does it purport to represent the judgment of the court, but merely records the agreement of the parties. *Bergman v. Rhodes* (1929), 334 Ill. 137, 165 N.E. 598; *Paine v. Doughty* (1911), 251 Ill. 396, 96 N.E. 212; *Nelson v. Nelson.*

So it is in this case that the public policy of this State imposes a duty upon a father to support his child that cannot be bargained away. The agreement between the plaintiff and the defendant to suspend support payments for failure of the wife to afford visitation in the summer of 1975, even though incorporated in an order of court, does not and cannot either transcend or suspend the legally imposed obligation to support minor children.

The plaintiff relies upon *Cooper v. Cooper* (1978), 59 Ill. App. 3d 457, 375 N.E.2d 925, and Ill. Rev. Stat. 1977, ch. 40, par. 509. The statute, part of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*, effective October 1, 1977), provides:

"If a party fails to comply with a provision of a judgment, order or injunction, the obligation of the other party to make payments for support or maintenance or to permit visitation is not suspended; but he may move the court to grant an appropriate order."

The statute expressly forbids a party, the husband in this case, from suspending support or maintenance payments when the other party, the wife in this case, fails to comply with a provision of an order or judgment, such as an order for visitation. With this provision the defendant has no quarrel, claiming he is exempt from its requirements. Rather, defendant relies on the concluding clause of the statute which states that a party wronged by a violation of an order by the other party may move the court to grant an appropriate order. This he claims he has done and the "appropriate order" was that contained in the order of February 28, 1975, and repeated in the order appealed, which terminated support payments when visitation as ordered was refused.

■ It is to be noted that the statute does not expressly say that for a violation of an order support or maintenance payments shall, or even may, be suspended. The statute speaks in the general terminology of entry of an "appropriate order." We have not been cited, nor can we find, an Illinois case which discusses what may be an appropriate order in the context presented here. We find no expression of intention by the legislature in the statute to change or abolish the strong public policy governing the responsibility of parents for support of their children. A reasonable interpretation of the intent of the legislature in adopting section 510 of the Act would be that it is a codification of the pre-existing law. Under that law, and the circumstances present here, an appropriate order would not be the termination of support payments. More appropriate, and consonant with the public policy, would be punishment for contempt of court for a wilful violation of the order for visitation or, perhaps, a reconsideration of the best interests of the children with regard to which parent shall have their custody. Parents who wilfully disregard appropriate court orders may properly have their fitness to be custodial parents questioned.

We think, too, that this is the thrust of *Cooper v. Cooper.* That case contains a rather strong statement of the public policy which imposes liability for support upon a father and indicates that that policy will transcend any charge that may arise because of a deprivation of rights of visitation.

> "Although the allegations [in the father's petition to terminate child support] are tantamount to the accusation that plaintiff used the children as pawns in her game of bitterness and recrimination [citation], a mere violation of visitation terms will not excuse the father's obligation to support his children [citations]. This is true even though visitation privileges should not be awarded or withheld as a punishment or reward to either parent, and visitation privileges may be denied or restricted in the best interest of the child. [Citations.]" (*Cooper v. Cooper* (1978), 59 Ill. App. 3d 457, 464, 375 N.E.2d 925, 931.)

The court in *Cooper* went on to say, in effect, that there could possibly be presented to a court some set of circumstances which would justify it in terminating a father's liability for support, and in view of the extremely serious charges contained in the father's petition its dismissal was reversed and remanded for hearing and determination. Of obvious import to the court's decision in *Cooper* was the fact that the mother was independently wealthy, a condition notably absent in the case at hand.

Under the circumstances of this case the agreement between plaintiff and defendant absolving defendant from liability for support of his children when deprived of the right of visitation, and those portions of the

court orders of February 28, 1975, and June 27, 1978, which incorporated the agreement, are void as against public policy and of no legal effect. Accordingly, on plaintiff's appeal this case is reversed and remanded for entry of judgment for plaintiff for accrued child support.

As to defendant's appeal from the order of June 27, 1978, which fixed the amount of child support thenceforth at $32.50 per week per child, we find it to be without merit. The discretion of the trial court in this regard is supported by the record. That order is affirmed.

Reversed in part, affirmed in part, and remanded.

G. MORAN, J., concurs.

Mr. JUSTICE KARNS, dissenting in part:

The order of February 28, 1975, entered by agreement of the parties, while perhaps erroneous (but see *Cooper v. Cooper* (1975), 59 Ill. App. 3d 457, 375 N.E.2d 925, and cases therein cited), and subject to modification by the trial court or this court was effective and binding on the parties until modified, expunged or reversed. Even if the order was contrary to the public policy of this State, it was at best erroneous and voidable, not void, as surely the trial court had jurisdiction of the parties and the subject matter. (*Tucker v. Tucker* (1975), 29 Ill. App. 3d 274, 330 N.E.2d 274.) If this is not an "appropriate order" under the new act (Ill. Rev. Stat. 1977, ch. 40, par. 509), it was one the court had the power to make.

The fact that the order was entered with the consent of the parties makes it no less the order of the court, and while there is authority that consent judgments and orders do not have the finality to be accorded the effect of *res adjudicata* (*Freasman v. Smith* (1942), 379 Ill. 79, 39 N.E.2d 367 (1942)), it is the law of the case until modified or reversed on appeal and should be protected against collateral attack as between the parties. (*Filosa v. Pecora* (1974), 18 Ill. App. 3d 123, 309 N.E.2d 356.) In fact, it is often stated that no appeal can be taken from a consent decree. *Nelson v. Nelson* (1950), 340 Ill. App. 463, 92 N.E.2d 534.

So long as the order of February 28, 1975, was in effect, no arrearage in support accrued if the terms of the order were violated, as the trial court found, which finding this court has approved as not against the manifest weight of the evidence. In effect, this decision requires the father to pay retroactive support.

*Leland v. Brower* (1963), 28 Ill. 2d 598, 192 N.E.2d 831, is hardly authority for the decision reached here as there the court, reversing the trial court, gave effect to an Ohio decree relieving a father temporarily of any obligation to pay periodic child support in the absence of a showing that the mother was unable to support the children. *Nelson v. Nelson*

involved an agreement of the parties absolving the father of his duty to pay child support provided for in a decree of divorce. It did not involve a judgment or order of a court modifying a decree.

I agree with the majority that the order of the trial court entered June 27, 1978, the order from which this appeal is taken, should be reversed as to future child support being made contingent on visitation, and that the father's obligation to pay future support from June 27 should be affirmed.