# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*In re Marriage of Popa*, **2013 IL App (1st) 130818**

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF CIPRIAN POPA, Petitioner-Appellee, and ADRIANA GARCIA, Respondent-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-13-0818 |
| Filed | August 23, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a marriage dissolution proceeding, the trial court did not err in creating a trust fund to enforce petitioner's child support obligation pursuant to section 509 of the Illinois Marriage and Dissolution of Marriage Act after respondent took the children and moved to Uruguay, since the circumstances were egregious, especially in view of the special needs of the parties' daughter, and the trust fund, including the provision restricting withdrawals without court approval, was the best way to assure petitioner that the support payments would not be misused and that the childrens' interests would be protected. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-D-11421; the Hon. Lisa Murphy, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal    Klein, Thorpe & Jenkins, Ltd., of Chicago (James W. Fessler and J. Allen Wall, of counsel), for appellant.

Joan S. Colen, of Chicago, for appellee.

Panel    PRESIDING JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justices Hall and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1    In 2009, respondent Adriana Garcia and petitioner Ciprian Popa received a divorce judgment, which provided, *inter alia*, that Popa pay Garcia, the custodial parent of their two minor children, monthly child support. In 2012, Garcia took the children to Uruguay, and Popa filed a motion to abate child support. The trial court denied Popa's motion to abate child support but ordered him to open a trust account for the benefit of the minor children, name himself as trustee, and pay all his child support into the trust account. The order also provided that neither Garcia nor Popa should make any withdrawals from that trust account without a court order authorizing such withdrawal.

¶ 2    In this discretionary interlocutory appeal concerning the care of minors, Garcia appeals the circuit court's order establishing the trust account. She argues that (1) Popa did not move the trial court to grant an appropriate order when he moved to abate child support under section 509 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/509 (West 2012)); and (2) the trial court's order establishing the trust account is improper because it constitutes an order suspending child support payments despite clear, legal precedent that child support payments cannot be linked to a custodial parent's violation of visitation terms.

¶ 3    We affirm the judgment of the circuit court. We hold that the circuit court did not exceed its authority and did not abuse its discretion by establishing a trust for the benefit of the minor children of a dissolved marriage to enforce Popa's child support obligation. The evidence indicated that the establishment of the trust was necessary to protect and promote the best interests of the children and Popa was unwilling to make support payments after Garcia removed the children from the country over six months ago in violation of the parties' custody order.

¶ 4    I. BACKGROUND

¶ 5    Popa and Garcia were married in 2002 and in October 2005 had twins–a daughter and a son. Popa and Garcia were divorced by a judgment entered in October 2009. Among other things, that judgment required Popa to pay child support to Garcia in the amount of $2,800 per month. That amount was based on their daughter's special needs and the fact that Garcia

-2-

was unemployed in order to care for their daughter.

¶ 6    On June 13, 2012, Popa filed a *pro se* petition to modify child support, alleging that he lost his work contract on June 1, 2012, and suffered a considerable decrease in income.

¶ 7    On or about August 10, 2012, Garcia took the children to Uruguay and remained there with them until about September 5, 2012, when she and the children returned to Chicago. About October 16, 2012, Garcia took the children back to Uruguay and has remained there with them.

¶ 8    On October 22, 2012, the court entered an order that Garcia and the children return from Uruguay to Chicago.

¶ 9    In January 2013, Popa, through counsel, moved the court to abate his child support obligation for as long as Garcia remained outside the court's jurisdiction. Popa argued that his child support payments helped make it possible for Garcia to take the children to Uruguay and remain there in violation of court orders.

¶ 10    In response, counsel for Garcia asserted that Garcia's travel to Uruguay complied with the parties' custody order, which allowed her to travel to Uruguay to visit family at least twice per year and provided her with three consecutive weeks of summer vacation with the children to engage in any international travel. Garcia also asserted that, because she went to Uruguay on October 16, 2002, before the court entered its October 22, 2012 order, her travel did not violate any court order. She alleged that Popa had stopped paying child support in July 2012 and never served her with his June 2012 *pro se* petition to modify support. She claimed that the child support barely covered the children's basic needs, and her family in Uruguay purchased the tickets for her and her children to travel due to a severe medical emergency. In addition, she asserted that her family in Uruguay has provided shelter, food and all of the children's needs ever since Popa's July 2012 failure to comply with child support. She also asserted that she did not interfere with Popa's visitation in September 2012; rather, he voluntarily missed visitation with his children due to his wedding and international travel for his honeymoon. Furthermore, when Popa returned to Chicago, he had visitation with their daughter on October 2, 2012, from 5 p.m. to 7 p.m. at a public library. Garcia asked the court to deny Popa's motion to abate child support, enforce the 2009 child support order, and order Popa to pay all past-due child support payments, interest, fees and applicable penalties.

¶ 11    On February 14, 2013, the trial court held a hearing on Popa's motion to abate child support. Garcia was not present. Popa asked that child support be abated until the children were returned because it was inequitable and inappropriate for him to continue funding Garcia's ongoing violation of the court's orders and ongoing abduction of the children. Citing *Cooper v. Cooper*, 59 Ill. App. 3d 457 (1978), Popa argued the court should consider his unique petition, which was prompted by more than Garcia's alleged interference with visitation, and conclude that, in this extreme situation, it would be appropriate to suspend child support as a response to Garcia's refusal to comply with court orders to return the children to Illinois. Popa argued that he did not unilaterally resort to self-help and stop paying support but, rather, moved the court for an appropriate order under section 509 of the Act.

¶ 12    Counsel for Garcia claimed that Popa had not paid child support for six months. To support this assertion, counsel referred to an Illinois disbursement unit child support summary of Popa's payment history only through September 25, 2012, which indicated that he made two payments of $500 on August 31, 2012. Counsel also argued that Popa's motion to abate was an improper attempt to link his child support obligations to his right to visitation.

¶ 13    Counsel for the children argued that the mother's removal of the children from the country was a very serious case and not simply a matter of a few missed visitations. Counsel stated that the Act intends to protect the children's emotional need to have contact with both parents. Furthermore, since the daughter's birth, her treating physician for her condition has been located in Illinois, and there has been no evidence about the daughter's current treatment since the mother removed the children from the court's jurisdiction. Moreover, the mother failed to comply with the court's order to return the children to Illinois.

¶ 14    Because Garcia's counsel had appeared in this case only recently, the trial court educated him concerning the history of this case. Specifically, three years ago, Garcia appeared *pro se* and asked the court for supervised visitation because she believed Popa would abscond with the children and she would never see them again. At that time, the court warned Garcia, who had filed many pleadings and petitions for orders of protection, to carefully consider her arguments and allegations. Now, the court noted that Popa had not seen his children in six months because, contrary to the court's orders and the law of the case, Garcia made the children available according to her own discretion.

¶ 15    The trial judge noted the seriousness of Popa's motion and stated that the only other instance in which the judge had abated child support occurred 18 years ago in a case involving significant violations of a visitation order. The court stated that the issues of visitation and support should not be linked but abatement of support could be appropriate in an egregious situation. The court stressed that it was not linking the abatement of support to Garcia's failure to comply with court orders or the lack of visitation. However, the court noted that Garcia's removal of the children from the country in violation of the custody order and without the court's permission constituted an egregious situation. The court stated that if it were true that there was some medical emergency in Uruguay, the proper course of procedure was to ask the court for permission to go there. The court noted that the children had a right to see their father and it was not in the children's best interest to be out of school and not to see their father for six months. Furthermore, Popa would need resources to retrieve his children, and the court might allow him to use the support money to garner the necessary resources because it was in the children's best interest to be brought back to Illinois. The court concluded that section 509 of the Act supported Popa's petition but deferred ruling on whether it would order either an abatement of support or the payment of support into a trust for the benefit of the children. The court did not make any finding concerning whether Popa was in arrears in paying child support.

¶ 16    On March 13, 2013, the trial court ruled:

"[Popa] shall open a trust account for the benefit of the minor children, with himself as trustee, and shall pay all child support payments into the trust. Neither party shall make

any withdrawals from the trust account without court order authorizing same."

The court also granted Popa leave to file an amended motion to modify child support. Further, the court issued a rule to show cause why Garcia should not be held in contempt and set that matter for hearing at a later date.

¶ 17   On March 18, 2013, a hearing was held on Popa's petition for rule to show cause, and the court found Garcia in contempt for violating Popa's right to parenting time. Popa's motion to modify custody was set for hearing in August 2013.

¶ 18   In March 2013, this court allowed Garcia's petition, pursuant to Illinois Supreme Court Rule 306(a)(5) (eff. Feb. 16, 2011), seeking an interlocutory appeal of the circuit court's order concerning the establishment of the trust fund.

¶ 19                                    II. ANALYSIS

¶ 20   On appeal, Garcia asks this court to reverse the trial court's order concerning the establishment of the trust account and to require Popa to make his child support payments directly to Garcia. Garcia argues that the circuit court's order is improper under section 509 of the Act because the order impermissibly links a suspension of the noncustodial parent's child support payments to the custodial parent's suspension of visitation rights.

¶ 21   When reviewing a ruling on a motion to modify child support, this court will not reverse the trial court's factual findings unless they are against the manifest weight of the evidence. *In re Marriage of Charles*, 284 Ill. App. 3d 339, 342 (1996). Further, modification of a child support order lies within the trial court's discretion, and we will not disturb its decision absent an abuse of discretion. *People ex rel. Hines v. Hines*, 236 Ill. App. 3d 739, 744 (1992). This court has acknowledged "the novel possibility that [the noncustodial parent's] obligation for child support could be terminated or suspended should he prove the extreme and unusual allegations [concerning the custodial parent's contumacious behavior]." *Cooper*, 59 Ill. App. 3d at 464 (father was entitled to a hearing on his petition to reduce support payments, which alleged the mother used the children as pawns in a game of psychological warfare and poisoned their minds against their father). Although a mere violation of visitation terms will not excuse the noncustodial parent's obligation to pay child support, active and extreme interference with his relationship with the children by the custodial parent may establish a substantial change in circumstance that warrants modification of the noncustodial parent's obligation. *In re Marriage of Heldebrandt*, 301 Ill. App. 3d 265, 269 (1998) (citing *Cooper*, 59 Ill. App. 3d 457, and *Weinert v. Weinert*, 105 Ill. App. 3d 56 (1982)). "Limiting child support is a 'drastic sanction' and the movant appropriately bears a 'heavy burden of proof.' " *In re Marriage of Heldebrandt*, 301 Ill. App. 3d at 271 (quoting *Department of Public Aid ex rel. Nale v. Nale*, 294 Ill. App. 3d 747, 752 (1998)) (the trial court properly placed the burden on the father to prove his allegation that the mother's conduct amounted to bad-faith interference with his relationship with the children).

¶ 22   Section 509 of the Act provides as follows:

"Independence of provisions of judgment or temporary order. If a party fails to comply with a provision of a judgment, order or injunction, the obligation of the other party to make payments for support or maintenance or to permit visitation is not suspended; but

he may move the court to grant an appropriate order." 750 ILCS 5/509 (West 2012).

¶ 23 Also relevant to this appeal is section 503(g) of the Act, which provides:

"The court if necessary to protect and promote the best interests of the children may set aside a portion of the jointly or separately held estates of the parties in a separate fund or trust for the support, maintenance, education, physical and mental health, and general welfare of any minor, dependent, or incompetent child of the parties." 750 ILCS 5/503(g) (West 2012).

The imposition of such a trust is "inappropriate in the absence of evidence showing some need to protect the interests of the children." (Internal quotation marks omitted.) *Atkinson v. Atkinson*, 87 Ill. 2d 174, 179 (1981). A need for such protection arises when the obligor spouse is either unwilling or unable to make child support payments. *In re Marriage of Petersen*, 319 Ill. App. 3d 325, 342-43 (2001). See also *In re Marriage of Steffen*, 253 Ill. App. 3d 966, 969 (1993) (the court has the authority to create a section 503(g) trust even in postdecree proceedings; authority to create such a trust is not limited to the time of the original decree dividing the property).

¶ 24 Garcia unsuccessfully attempts to characterize the trial court's order concerning the trust fund as a suspension of Popa's obligation to pay child support. Contrary to Garcia's arguments on appeal, the record establishes that the trial court denied Popa's request to abate his child support obligation for as long as Garcia remained outside the court's jurisdiction. Instead, the court required Popa to establish a trust fund for the benefit of his children, with himself as trustee, and make all his support payments into the trust. Furthermore, the court ordered that neither Popa nor Garcia could make any withdrawals from the trust without court authorization. We conclude that the trial court neither relieved Popa of his obligation to pay child support nor impermissibly linked his obligation to pay child support to Garcia's suspension of Popa's visitation rights.

¶ 25 We agree with Garcia that Illinois law is clear that support payments cannot be linked to visitation rights and that it is improper to deprive the children of support because of the supposed misconduct of the custodial parent. See *Wick v. Wick*, 19 Ill. 2d 457, 461 (1960) (support money may ordinarily be compelled even though the child has been removed from the jurisdiction of the court contrary to the terms of the divorce decree); *Cooper*, 59 Ill. App. 3d at 464 ("a mere violation of visitation terms will not excuse the father's obligation to support his children"); *People ex rel. Winger v. Young*, 78 Ill. App. 3d 512, 513-14 (1979) (the duties of visitation and support payments are completely independent; to hold otherwise would punish the child for the misconduct of the custodial parent). Nevertheless, we conclude that the trial court's order does not violate this proposition.

¶ 26 The trial court did not terminate or reduce Popa's support payments based on Garcia's removal of the children from the country. Rather, the court noted that Garcia's conduct in absconding with the minor children since October 2012 constituted an egregious situation that warranted appropriate relief under section 509 of the Act. The record supports the trial court's determination, particularly where the daughter has a condition that requires treatment, her treating physician since her birth has been located in Illinois, and Garcia's counsel did not provide the court with any pertinent information concerning the daughter's current

condition and treatment or the children's exact whereabouts. Furthermore, the children were not only deprived of visitation with their father for over six months but also were not attending school. In addition, Popa was reluctant to continue making his support payments because he believed Garcia was using that money to remain in Uruguay in violation of court orders. The record establishes that Garcia engaged in egregious behavior that actively and extremely interfered with Popa's relationship with his children. Contrary to Garcia's assertions on appeal, this case does not involve the mere suspension of the noncustodial parent's visitation rights by the custodial parent. The parties' daughter has a condition that requires treatment by a physician, the court has a duty to act in the children's best interest, and Garcia has not provided the court with any evidence or information concerning the daughter's current condition and treatment.

¶ 27    Under these egregious circumstances, the court concluded that the establishment of the trust provided Popa with appropriate relief under section 509 of the Act. Specifically, the court stated that it was in the children's best interests to be returned to Illinois and Popa would incur considerable expense in attempting to retrieve his children. We find no abuse of discretion by the trial court here. Although there was no finding by the trial court that Popa had failed to make his support payments, the record established that he was reluctant to continue paying support because he believed Garcia was misusing that money to remain in Uruguay with the children. The establishment of the trust for the benefit of the children assured Popa that the support payments would not be misused because neither he nor Garcia could make any withdrawals without court approval. The court is obligated to protect the best interests of the children (*Blisset v. Blisset*, 123 Ill. 2d 161, 167 (1988)), and the trust fund was the most effective means to serve that purpose. The trust affords a way to safeguard the interests of the children because it provides a safety mechanism–court approval of any withdrawals–so that the funds will be used to provide for the children and not for any improper purpose. That safeguard is needed to ensure that Popa will continue to abide by his obligation to pay support for his children.

¶ 28    Because past-due installments of child support are the vested right of the designated recipient, a court lacks authority to modify those amounts that have already accrued. *In re Marriage of Bush*, 191 Ill. App. 3d 249, 258-59 (1989). Thus, if a noncustodial parent's child support arrearages have been put into a trust, those monies must be taken out of the trust and paid immediately to the custodial parent. *Id*. Here, the evidence presented to the trial court by Garcia was insufficient to support her claim that Popa had failed to pay child support, and there was no finding by the trial court that Popa was in arrears concerning child support. Nevertheless, any discrepancies concerning the deposit of any arrearages into the trust may be raised by the parties to the trial court.

¶ 29    Garcia cites *Winger*, 78 Ill. App. 3d 512, *Huckaby v. Huckaby*, 75 Ill. App. 3d 195 (1979), and *Slavis v. Slavis*, 12 Ill. App. 3d 467 (1973), to support the proposition that the trial court's establishment of the trust fund was improper relief under section 509 of the Act. Garcia's reliance on those cases, however, is unavailing.

¶ 30    In *Winger*, 78 Ill. App. 3d 512, the custodial mother and child moved from Illinois to Wisconsin without giving notice to the noncustodial father. When the mother later moved the Illinois court for child support payments due and owing, the father argued that his duty

to continue paying child support was negated by the mother's move to Wisconsin and keeping the child's whereabouts hidden from him. *Id*. at 513. The trial court ordered the father to pay $25 weekly support to the court clerk in Illinois, but further ordered the clerk not to disburse the funds to the Wisconsin court or the wife until the wife granted the father visitation rights. *Id*. The appellate court reversed and remanded, concluding that the trial court lacked authority to withhold child support payments until a custodial parent makes the child available for visitation. *Id*. at 514. *Winger* is distinguishable from the instant case. As discussed in detail above, the instant case does not involve a mere interference with the father's visitation but, rather, egregious conduct by the mother that interferes with the father's relationship with his children. Furthermore, the trial court did not make withdrawals from the trust fund contingent upon Garcia's compliance with the orders concerning visitation.

¶ 31      In *Huckaby*, 75 Ill. App. 3d at 196, the parents divorced, and the mother, with court approval, moved from Illinois to California with the children. After a dispute concerning the father's support payment arrearages, the parents agreed to the entry of a court order that provided the father's child support obligation would cease if the mother failed to allow the father's visitation in accordance with their divorce decree. *Id*. at 196-97. The father stopped paying support after the mother sent the children to Japan to visit her parents during the father's scheduled visitation in the summer of 1975. *Id*. at 197. In 1978, the mother filed a petition for citation for contempt, judgment for arrearages, and attorney fees, but the trial court, *inter alia*, denied her petition because she had violated the parties' agreed order when she failed to allow the father's summer visitation. *Id*. The appellate court reversed that portion of the order and concluded that the father's obligation to support his children could not be bargained away. *Id*. at 199. *Huckaby*, which involved a mere interference with visitation and the termination of support payments, is of no assistance to Garcia. The instant case involves egregious circumstances that amount to more than mere interference with Popa's visitation, and the trial court did not relieve Popa of his obligation to pay child support.

¶ 32      In *Slavis*, 12 Ill. App. 3d at 470, the parents, at the time of their divorce, had moved from Illinois to New York, and then, around November 1964, the mother moved to Jamaica with their child. The father ceased making alimony and support payments when the mother left New York. *Id*. at 471. In 1965, a New York court ordered the mother to make the child available there for visitation purposes, but she never complied with that order. *Id*. at 469-70. In 1968, the mother filed a petition in Illinois to collect arrearage of alimony and child support. *Id*. at 471. The trial court denied the mother's petition, finding that, by her actions, she assumed the responsibility to support her own child and was thereby estopped from asserting her right under the original court order for alimony and child support. *Id*. The appellate court reversed, holding that the mother's violation of the visitation terms of the divorce decree did not excuse the father's failure to comply with the alimony and child support terms. *Id*. at 472. *Slavis* is distinguishable from the instant case because the trial court's order establishing the trust has not relieved Popa of his obligation to pay child support.

¶ 33                        III. CONCLUSION

¶ 34        We hold that the trial court did not exceed its authority and did not abuse its discretion when it ordered, as appropriate relief under section 509 of the Act, the creation of a trust fund for the benefit of the children to enforce the father's child support obligation. For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 35        Affirmed.