PHYLLIS L. COOPER, Plaintiff-Appellee, v. LEONARD E. COOPER, Defendant-Appellant.

First District (2nd Division)   No. 77-94

Opinion filed April 18, 1978.

Ronald S. Ladden and Jerome Marvin Kaplan, both of Chicago, for appellant.

Jerome Berkson and Beermann, Swerdlove, Woloshin & Barezky, both of Chicago (Miles N. Beermann, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Defendant, Leonard E. Cooper, appeals from two orders entered by the circuit court of Cook County. By the first order, the court sustained a motion by plaintiff, Phyllis L. Cooper, to strike defendant's petition to terminate child support and for other relief, found defendant in arrears in the amount of $1,400 for child support, and ordered defendant to pay plaintiff the arrearage forthwith. By the second order, the court found defendant in contempt of court for his wilful refusal to obey the first order in regard to the payment of the arrearage. The court imposed a fine of $1,000 as a sanction for defendant's contempt of court. On appeal, defendant contends: (1) that the court erred in striking his petition to modify; and (2) that the court erred in holding him in contempt.

Defendant filed a lengthy petition to modify the divorce decree, seeking several forms of relief. In order to provide a background to our opinion, it is necessary to summarize the allegations in the petition. Defendant requested that child support be terminated; that he be relieved

of any obligation for the college education of his two minor children, including payment of support while the children attended college; and that he be relieved of the obligation of carrying several forms of insurance. Further, defendant sought an order that required plaintiff to repay defendant the amount of money that he would have been relieved of paying had the children stayed with him during summer visitation. If the court denied his request for relief of the total obligation for the children's college education, defendant then asked for a modification of his obligation due to the children's ability to contribute from funds they will receive upon reaching majority. Lastly, defendant asked for an award of attorney's fees and any other equitable relief found appropriate.

In support of the relief sought, defendant first alleged the existence of the parties' divorce decree and the numerous provisions contained therein. The parties have two children: Lloyd, born to the parties on March 9, 1960, and James, an adopted son, born on October 12, 1959. In part the divorce decree and property settlement agreement provided for plaintiff's custody of the children subject to defendant's visitation rights, defendant's payment of $500 per month child support, defendant's continued payment of support until each child completed college or otherwise became emancipated, defendant's payment of 50% of the child support while also assuming the children's living expenses at school, and defendant's obligation to continue certain insurance policies.

Besides the divorce decree, defendant also alleged the multitude of post-decretal petitions he filed in order to modify the visitation provisions. The petitions had been motivated by defendant's belief that plaintiff had purposely poisoned the children's minds so that they would not want to visit their father. Defendant also appended another petition for modification filed on July 25, 1972, and the order which resulted. The appended petition had sought a change in custody, an order that plaintiff be commanded to submit to psychiatric evaluation, the production of certain documents, and any other equitable relief. That earlier petition both catalogued numerous examples where plaintiff engaged in "psychological warfare" against defendant and set forth other, even earlier petitions whereby the parties had sought changes in the visitation provisions.

In addition, defendant's petition for termination also included the appended order entered on March 27, 1973, as a result of his petition filed on July 25, 1972. In part, the court made adjustments to certain bills which plaintiff claimed that defendant had not paid. The court found that defendant had not been consulted about either orthodonture treatment for the children or tutoring services for them. The amount of child support was increased to $700 per month, but that sum would again be adjusted should the children not be placed in therapy with a child

psychiatrist as provided in the order. Although the question of a change in custody was continued generally, the court set up a visitation schedule and ordered that such visitation should be voluntary on the part of the children, subject to review after therapy had commenced. Plaintiff was also ordered to encourage visitation and enjoined from making disparaging remarks about defendant to the children. She was also enjoined from interfering with defendant's visitation with the children. Defendant was permitted to select the psychiatrist for the children, but the doctor was to be located near plaintiff's home.

After setting forth the contents of the earlier petition and the order, defendant's present petition for modification resumed with further allegations. Defendant alleged that he selected a Dr. Lifson as the children's psychiatrist, but that plaintiff refused to cooperate with the doctor in order to set up appointments. A letter from Dr. Lifson was also appended to defendant's petition and the letter corroborated defendant's allegation. Although defendant then filed a rule to show cause against plaintiff, she eventually cooperated with the arrangement of appointments. Dr. Lifson determined that only one of the children needed therapy, but plaintiff refused to submit the child to the needed therapy. Defendant also alleged that the last time he saw his sons was in February of 1973 at a court hearing; and that on Dr. Lifson's advice he has done nothing further, hoping that the children would gravitate toward him in the future. This never happened. Although defendant had written to the children, they never responded by way of either a letter or a phone call.

After this long recital of the history of the case, defendant then moved the court to relieve him of the obligation of child support. He emphasized that plaintiff's wealth would insure that the children's material needs would be met. Moreover, defendant stated in his petition that he had stopped making support payments. Instead, he created a bank account into which he deposited the monthly payments. Defendant also alleged that he does not now seek visitation with his sons. He has since remarried and the children were disruptive forces in the household when they did visit.

Plaintiff filed a motion to strike defendant's all-inclusive petition, alleging that defendant's petition stated no evidence upon which relief could be granted. She alleged that defendant's petition failed to set forth any evidence showing a change of circumstance since the order of March 27, 1973; and that, therefore, there was no basis upon which the court could modify the divorce decree or the earlier order. Even if all of the evidence alleged in defendant's petition were taken as true, plaintiff asserted that the petition set forth no evidence justifying the requested relief. She stated that nonvisitation is not a ground for terminating child

support; and that only the children's emancipation or adoption could alter defendant's continuing obligation to support them. Plaintiff's motion noted that defendant did not seek visitation, but instead sought the termination of child support due to his inability to obtain visitation. Thereupon, plaintiff prayed that the petition be stricken, and that defendant be directed to pay child support, rather than depositing the sums in a bank account.

After a hearing held on September 30, 1976, the court entered an order sustaining plaintiff's motion to strike defendant's petition. The court also found defendant $1,400 in arrears for child support, ordered him to pay the sum immediately, and continued all matters still pending to October 5, 1976. Following a second hearing, the court entered another order on October 6, 1976, holding defendant in contempt of court for his wilful refusal to obey the previous order regarding payment of arrearages. As a sanction, defendant was ordered to pay a $1,000 fine. This appeal followed.

I.

A.

Although defendant maintains that the cause must be reversed because the court erred in striking his petition, in essence defendant is seeking a hearing on the merits of his petition. The question then becomes whether defendant has alleged sufficient facts to entitle him to overcome the motion to strike. We note that the earlier petition for modification appended to the current petition alleged a multitude of facts purporting to show that plaintiff's course of conduct was calculated to destroy, and did in fact destroy, the father-son relationship. As plaintiff chose to file a motion to strike, rather than an answer, defendant maintains that plaintiff has admitted those underlying facts. Plaintiff argues that such facts were not admitted because they were not well pleaded; and that she moved to strike defendant's entire pleading because it was substantially insufficient in law (Ill. Rev. Stat. 1975, ch. 110, par. 45).

She argues that the facts alleged in the appended petition were not admitted because (1) they had previously been ruled upon by the court; (2) they were *res judicata* to the issues raised by the current petition; and (3) they were in direct opposition to the facts alleged in the current petition. To support her contention that the facts had been ruled upon by the court, plaintiff points to a provision in the order of March 27, 1973, which "continued generally" defendant's petition for a change in custody. Obviously, an order granting a continuance cannot be elevated to a definitive ruling on a substantive issue.

■■ Plaintiff's claim of the applicability of *res judicata* is likewise

unpersuasive. The doctrine of *res judicata* is that a cause of action finally determined between the parties on the merits, by a court of competent jurisdiction, cannot again be litigated by new proceedings before the same or any other tribunal, except as the judgment or decree may be brought before a court of appellate jurisdiction for review in the manner provided by law. (*Charles E. Harding Co. v. Harding* (1933), 352 Ill. 417, 426, 186 N.E. 152.) The purpose of the doctrine is to prevent the relitigation, in a subsequent proceeding, of questions settled by a court of competent jurisdiction in a prior suit between the same parties or their privies. (*City of Elmhurst v. Kegerreis* (1945), 392 Ill. 195, 208, 64 N.E.2d 450.) Where the parties to a new action are the same as the parties to a prior action, and the same subject matter is the basis for the new action but the claim or cause of action is different, the prior decision operates as an estoppel only as to those matters in issue or points controverted, and is only conclusive as to those questions actually raised and determined therein. (*Foreman v. Martin* (2d Dist. 1975), 26 Ill. App. 3d 1028, 1030, 325 N.E.2d 378; *Seno v. Franke* (1st Dist. 1958), 16 Ill. App. 2d 39, 46, 147 N.E.2d 469.) In the case at bar defendant's petition for termination of child support introduced a new claim. He no longer sought further modification of the child custody and visitation provisions, but instead sought the complete cessation of the duty to support. We do not think the doctrine of *res judicata* should be invoked in a situation involving changing circumstances and changing claims for relief.

Plaintiff also contends that such allegations were not admitted because defendant's present petition introduced new, additional facts. Although she first argues the applicability of *res judicata* because the facts in the July 25, 1972, petition were "substantially the same facts" raised by defendant even earlier, plaintiff then contends that the facts alleged in the August 18, 1976, petition were "diametrically opposed to the facts alleged in his July 25, 1972 petition." We fail to understand how defendant's allegation that he no longer seeks visitation affects the question of whether plaintiff admitted the allegations of misconduct. If plaintiff believed defendant's appended petition was an unfair characterization of the case's chronology, she could have answered the petition and supplemented the record with the additional facts she deemed pertinent. In any event, we think the appended petition served to summarize the long history of the case and, therefore, could have aided the court as a synopsis. It must be emphasized that the earlier petition contained a sequential recitation of defendant's factual allegations. Thus, the court below was in the best position to consider such allegations and assign to them whatever weight it determined to be proper.

Notwithstanding plaintiff's claim that her conduct is not an issue in this case, we think it could well be an issue. If, in fact, defendant petitioned

for the termination of child support and visitation privileges due to plaintiff's alleged unreasonable interference with visitation and her success in destroying the father-son relationship, then her conduct is an issue. If, however, defendant's petition is premised on a simple, irresponsible desire to avoid paying child support, then plaintiff's conduct is not an issue. These questions can only be answered in a hearing on the petition's merits. Yet we are not unmindful that defendant sought below and is now seeking a judicial determination of whether a court may terminate child support for the failure of the custodial parent to comply with court orders relative to visitation.

## B.

■■ The record reflects that plaintiff's motion to strike defendant's petition was granted because the trial court believed that a father can never terminate child support. A father may not decide when and for what reason he will discontinue child support; that decision is within the sole province of the court. (See *Chmelik v. Chmelik* (1st Dist. 1960), 25 Ill. App. 2d 192, 166 N.E.2d 101 (abstract); *Trimble v. Trimble* (1st Dist. 1958), 16 Ill. App. 2d 408, 413, 148 N.E.2d 612.) In the case at bar, defendant contends that the court below had the power to impose economic sanctions on plaintiff for her contumacious interference with defendant's visitation rights. While we would not call the termination of child support an "economic sanction," we think the court has clear statutory authority, in the proper case, to terminate child support. Section 18 of the Divorce Act provides, in part:

> "The court may, on application, from time to time, *terminate* or make such alterations in the allowance of alimony and maintenance, and the care, education, custody and support of the children, as shall appear reasonable and proper." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 40, par. 19.)

Nevertheless, plaintiff insists that there is no Illinois authority permitting the termination of child support.

Her position is based on the case of *Slavis v. Slavis* (1st Dist. 1973), 12 Ill. App. 3d 467, 472, 299 N.E.2d 413, where we stated that "a violation of the visitation terms of a divorce decree by the mother will not excuse the father's failure to comply with the alimony and child support terms." In *Slavis* and many of the cases cited therein, the mother removed the child from the jurisdiction and the father then failed to make support payments. In the instant case, however, defendant sought access to the courts in order to alter the visitation provisions. He did not, as plaintiff implies, arbitrarily decide on his own to terminate support. Plaintiff argues that since Illinois courts have held the obligation of a father to support his child begins when the child is born and continues during the

child's minority *(Kelley v. Kelley* (1925), 317 Ill. 104, 110, 147 N.E. 659; accord, *Leland v. Brower* (1963), 28 Ill. 2d 598, 600, 192 N.E.2d 831; *Elble v. Elble* (5th Dist. 1968), 100 Ill. App. 2d 221, 226, 241 N.E.2d 328; *People ex rel. Hartshorn v. Hartshorn* (2d Dist. 1959), 21 Ill. App. 2d 91, 103, 157 N.E.2d 563), there can be no exception. We disagree.

■■■ We are not now compelled to determine whether the court below should have terminated child support in the case at bar. In the absence of a hearing on the merits of defendant's petition, we decline to comment on the likelihood of his success. We simply acknowledge the novel possibility that defendant's obligation for child support could be terminated or suspended should he prove the extreme and unusual allegations of his petition. Although the allegations are tantamount to the accusation that plaintiff used the children as pawns in her game of bitterness and recrimination *(cf. Aud v. Etienne* (1970), 47 Ill. 2d 110, 112, 264 N.E.2d 196), a mere violation of visitation terms will not excuse the father's obligation to support his children (see *Slavis; Melvin v. Melvin* (5th Dist. 1971), 131 Ill. App. 2d 1070, 269 N.E.2d 363 (abstract); *McDonald v. McDonald* (1st Dist. 1956), 11 Ill. App. 2d 240, 136 N.E.2d 556 (abstract); *Arbuckle v. Jones* (1st Dist. 1937), 292 Ill. App. 643, 11 N.E.2d 867 (abstract)). This is true even though visitation privileges should not be awarded or withheld as a punishment or reward to either parent, and visitation privileges may be denied or restricted in the best interest of the child. *(Valencia v. Valencia* (5th Dist. 1977), 46 Ill. App. 3d 741, 745, 360 N.E.2d 1384; *Keefer v. Keefer* (2d Dist. 1969), 107 Ill. App. 2d 74, 78, 245 N.E.2d 784.) Yet our examination of the record reveals that defendant's unique petition was prompted by more than plaintiff's alleged interference with visitation.

When defendant sought on several occasions to have the court alter the visitation provisions, he did so due to his belief that plaintiff was poisoning the children's minds against him. The trial court's numerous orders entered as a result of the various petitions demonstrate to our satisfaction that the court had carefully fashioned defendant's visitation privileges to encourage the father-son relationship. Upon the entry of each new order, however, it appears that plaintiff's allegedly malicious conduct escalated. Defendant contends that he filed the petition under consideration because plaintiff would not comply with the many, prior orders. Thus, he suggests his petition is an effort to secure a meaningful sanction against plaintiff for her contumacious behavior. While defendant concedes that other avenues were available to him in his search for a meaningful sanction, he rejected them. Earlier attempts by the trial court to lecture plaintiff proved fruitless. The alternatives of seeking a fine against or incarceration of plaintiff were also deemed fruitless in light of plaintiff's alleged claims about him. For example, plaintiff is alleged to

have told the children that defendant gave them live rounds of ammunition with which to play; that defendant did not care about them because he had a new wife and new children; that defendant had done a terrible thing in deserting them and going to live with another woman; that defendant was late with support payments but had ample money; that defendant would buy them things if he really loved them; and that defendant was guilty of child abuse. We note that this is but a small sample of plaintiff's asserted "psychological warfare." In light of the vast number of allegations catalogued, it would appear that defendant might believe that if plaintiff were imprisoned or fined, she would inform the children and blame defendant. He chose, instead, to petition for termination of child support.

When discussed in the abstract, defendant's petition resembles a sanction not against plaintiff, but the children. The facts may well be to the contrary. In one of its earlier orders, the court recognized that the children should not be forced to visit defendant. Upon the recommendation of psychiatrists, visitation was to be voluntary on the part of the children. They never chose to visit defendant after the entry of the order. Yet courts have suspended a divorced father's obligation to support his minor children where they refuse to see, visit, or live with him. (See *Snellings v. Snellings* (1961), 272 Ala. 254, 130 So. 2d 363; *Putnam v. Putnam* (1939), 136 Fla. 220, 186 So. 517; *Cortina v. Cortina* (Fla. App. 1958), 108 So. 2d 63; *Creeley v. Creeley* (1927), 258 Mass. 460, 155 N.E. 424; Annot., "What Voluntary Acts of Child, Other Than Marriage or Entry into Military Service, Terminate Parent's Obligation to Support," 32 A.L.R. 3d 1055, §8[a] (1970); but see 32 A.L.R. 3d 1005, §8[b] (1970); *Straver v. Straver* (1948), 26 N.J. Misc. 218, 59 A.2d 39; *Yarborough v. Yarborough* (1932), 168 S.C. 46, 166 S.E. 877, *rev'd on other grounds* (1933), 290 U.S. 202, 78 L. Ed. 269, 54 S. Ct. 181.) Further, defendant has alleged plaintiff's substantial wealth and has suggested the children's own independent means of support. (See Annot., "Income of Child from other Source as Excusing Parent's Compliance with Support Provisions of Divorce Decree," 39 A.L.R. 3d 1292 (1971).) Even in jurisdictions where it is no longer seriously questioned that a trial court has power to terminate payments of support in a proper case and upon a proper showing (*Bowman v. Bowman* (1947), 29 Cal. 2d 808, 178 P.2d 751, 755), it is still improper to deprive the children of support because of the supposed misconduct of the mother (*Pendray v. Pendray* (1951), 35 Tenn. App. 284, 245 S.W.2d 204, 206). One of the issues which should be explored by the trial court on remand is whether the welfare of the children will be adversely affected by an order which relieves defendant of the duty to support. (*Cf. Warshaw v. Ginsburg* (1966), 245 Cal. App. 2d 513, 53 Cal. Rptr. 911, 914.) This issue must be judged in light of all relevant factors,

including the ages of the children, their material needs, their respective incomes, and plaintiff's income.

In holding that defendant is entitled to further proceedings in this matter, we emphasize that the trial court is vested with broad discretion. That court is in the best position to hear the witnesses and judge their credibility. As defendant's petition sets forth serious accusations and requests drastic relief, his burden of proof is a heavy one. If the court finds, however, that defendant has met the burden, then the relief requested may be granted. Accordingly, we reverse the trial court's granting of the motion to strike and remand the cause for further proceedings consistent with the views expressed herein.

This conclusion is in accord with section 509 of the recently enacted Illinois Marriage and Dissolution of Marriage Act[1] (effective October 1, 1977), which provides that:

"If a party fails to comply with a provision of a judgment, order or injunction, the obligation of the other party to make payments for support or maintenance or to permit visitation is not suspended; but he may move the court to grant an appropriate order." Ill. Rev. Stat. 1977, ch. 40, par. 509.

## II.

Defendant also maintains that the court erred by holding him in contempt for his failure to pay $1,400 in child support. When defendant's petition was stricken, the court ordered defendant to pay the arrearage which represented two months of support. The arrearage accumulated between the time that defendant filed his petition and the time that the court heard argument on the question. Defendant had deposited the money in a bank account when he filed the petition. On appeal defendant argues that the order holding him in contempt and fining him $1,000 was erroneous because he merely followed a procedure suggested by the case of *Wick v. Wick* (1960), 19 Ill. 2d 457, 167 N.E.2d 207.

In *Wick* the divorced father discontinued his support payments and instead made deposits in bank accounts to the credit of the children and himself as joint tenants. Under the circumstances of that case, the father's conduct did not amount to a contempt of court. The court in *Wick* noted, however, that the mother had also violated the divorce decree by departing from the state with the children. Further, the father testified that his purpose in depositing the money in bank accounts was to prevent disbursal of the funds for other than his children. The father was clearly concerned that the children would not have benefit of the support once it

---

[1] The question of the constitutionality of the Illinois Marriage and Dissolution of Marriage Act is currently pending before the Illinois Supreme Court in case no. 50288, *Kujawinski v. Laumann*; oral arguments were heard on March 28, 1978.

was sent outside the State, beyond the supervisory powers of the court. Thus, the court in *Wick* concluded that the trial court erred in finding the father in contempt of court because the father's conduct was not of a wilful and contumacious character.

■■■ The failure of a father to comply with the decree directing the payment of support money for children is *prima facie* evidence of contempt. (*Cole v. Cole* (1st Dist. 1967), 85 Ill. App. 2d 105, 112, 229 N.E.2d 293.) The burden then is on the father to show that he had a valid excuse for nonpayment. (*Cole*, at 112.) As a defense to a contempt action, the father need show simply that his failure to comply with the order was not a wilful and contumacious refusal. (*Ellingwood v. Ellingwood* (1st Dist. 1975), 25 Ill. App. 3d 587, 593, 323 N.E.2d 571; *Storm v. Storm* (1st Dist. 1973), 9 Ill. App. 3d 1071, 1076-77, 293 N.E.2d 633.) No such showing appears in the record before us. Moreover, defendant here was given the opportunity to purge himself of contempt by paying the arrearage, but he did not avail himself of the opportunity. We must conclude, therefore, that his conduct was both wilful and contumacious. *Cf. Bulmer v. Bulmer* (5th Dist. 1975), 28 Ill. App. 3d 406, 410, 328 N.E.2d 622.

■■■ Although defendant suggests that the question of contempt is moot because he has agreed to continue paying support during the pendency of this appeal, we cannot agree. His refusal to pay when ordered to do so by the court was a contempt. However, in view of the complicated history of this case and defendant's attempt to follow the *Wick* example, we think the $1,000 fine imposed was excessive. Accordingly, the order finding defendant in contempt of court is affirmed, the fine is vacated, and the cause is remanded to reconsider the fine, if any, to be imposed.

### III.

In summary, therefore, the order of the circuit court of Cook County striking defendant's petition is reversed and the cause is remanded with directions that further proceedings be held consistent with the views expressed herein. Further, the order holding defendant in contempt of court is affirmed, but the fine entered thereon is vacated. Lastly, that portion of the order fining defendant is remanded for the trial court's reconsideration of the fine.

Affirmed in part; reversed in part; remanded with directions.

STAMOS, P. J., and PERLIN, J., concur.