THERESA M. HESS, Petitioner-Appellee, *v.* HARMON A. HESS, Respondent-Appellant.

Third District   No. 80-198

Opinion filed August 28, 1980.

Nile J. Williamson, of Lindholm & Williamson, of Peoria, for appellant.

David M. Lynch, of Lynch & Bloom, of Peoria, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

This appeal is taken by the respondent, Harmon A. Hess, from orders of the court entered April 9, 1980, finding him to be in contempt of court for wilful and contumacious nonpayment of child support and finding the petitioner, Theresa M. Hess, not in contempt of court for failing to allow Harmon visitation with the couple's minor children. On appeal, Harmon questions whether the trial court's findings were against the manifest weight of the evidence and whether the trial court committed reversible error by failing to allow Harmon to purge himself of contempt.

■■ The appellee has failed to file a brief with this court, citing financial inability as the reason. Whatever the reason given for the failure to file a brief, a court of review should not feel compelled to serve as an advocate for the appellee or to search the record for the purpose of sustaining the judgment of the trial court. However, where the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, as is true in the instant case, a court of review should decide the merits of the appeal. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

The parties to this appeal were granted a dissolution of marriage on February 16, 1979. On March 23, 1979, a supplemental order was entered delineating the respective property rights of the parties and adjudicating custody and support matters.

The order of March 23, 1979, provided, *inter alia*, that Harmon was to have visitation of the parties' minor children every other weekend and alternate Wednesdays and holidays. Child support was fixed at 18 percent of Harmon's take-home pay but, in no event, to be less than $30 per week.

Theresa filed a petition for rule to show cause on March 6, 1980, and an order was entered pursuant thereto finding Harmon to be in arrears in child support payments in the amount of $630. On March 18, 1980, Harmon filed a petition for rule to show cause, upon which an order was entered, directing Theresa to show cause why she should not be held in contempt for wilful failure to allow visitation.

A consolidated hearing was held on April 9, 1980, at which time Harmon stipulated that he was in arrears in the amount of $720 from the date of dissolution until the time of the hearing. At the hearing, Harmon testified that he had worked approximately one week during the six-month period proceeding the hearing. He also testified that he had recently been called back to work at Farm Services, where he anticipated making $250 weekly. He stated that he had received unemployment

compensation in the amount of $50 per week for part of the six-month period, out of which he had paid approximately $240 in child support, although he was unsure of the exact amounts paid.

Harmon testified that he had been hospitalized for a period of time in October 1979. He was not sure whether he had suffered a heart attack but did recall being advised to "stay extremely calm and not do anything strenuous."

On cross-examination, Harmon admitted that his monthly rent of $295 had always been paid on time and that he had not sought a cheaper place to live although his rental payments exceeded the amount due as child support. All of his other bills, with the exception of one or two current utility bills, were paid.

On the basis of the evidence presented, Harmon was found to be in contempt of court for his wilful and contumacious refusal to pay child support. On appeal, he contends that this finding is against the manifest weight of the evidence. We disagree.

■■ It is well settled that the trial court's discretion will not be disturbed on review unless it is contrary to the manifest weight of the evidence. (*In re Marriage of Preston* (1980), 81 Ill. App. 3d 672, 402 N.E.2d 332.) In the case at bar, the evidence presented supports the trial court's findings.

In *Cooper v. Cooper* (1978), 59 Ill. App. 3d 457, 375 N.E.2d 925, the reviewing court discussed civil contempt based upon nonsupport as follows:

> "The failure of a father to comply with the decree directing the payment of support money for children is *prima facie* evidence of contempt. (*Cole v. Cole* (1st Dist. 1967), 85 Ill. App. 2d 105, 112, 229 N.E.2d 293.) The burden then is on the father to show that he had a valid excuse for nonpayment. (*Cole*, at 112.) As a defense to a contempt action, the father need show simply that his failure to comply with the order was not a wilful or contumacious refusal. (*Ellingwood v. Ellingwood* (1st Dist. 1975), 25 Ill. App. 3d 587, 593, 323 N.E.2d 571; *Storm v. Storm* (1st Dist. 1973), 9 Ill. App. 3d 1071, 1076-77, 293 N.E.2d 633.)" 59 Ill. App. 3d 457, 467, 375 N.E.2d 925, 933.

In the case at bar, the admission by the respondent that he was $720 in arrears in child-support payments at the time of the hearing established a *prima facie* case of contempt against him. The burden of showing that his failure to pay was not wilful or contumacious then shifted to the respondent. He has failed to meet that burden of proof.

■ Although he was out of work for a considerable period of time, the respondent made few efforts to pay child support from the unemployment compensation he was receiving. All of his bills were currently paid, including the rent on a rather expensive apartment. It is not clear

where the respondent obtained the money to make these payments, but it is clear that he failed to use the money to satisfy his obligations to pay child support. For this reason we will not disturb the decision of the trial court finding the respondent guilty of contempt for his refusal to make child-support payments.

Under the contempt order, Harmon was sentenced to 10 days' imprisonment in the Peoria County jail with mittimus to issue immediately, and an additional 30 days in that facility if he did not pay the sum of $500 toward the past-due child support. Bond in the amount of $720 was set, pending appeal.

■ Harmon contends that the effect of this sentence is penal in nature, because it allows him no opportunity to purge himself of contempt and thereby avoid serving the initial 10-day sentence. We agree that the order of the trial court sentencing the respondent to 20 days' imprisonment without first affording him an opportunity to purge himself of the contempt was erroneous. The respondent was found guilty of indirect civil contempt (see *Welding Industrial Supply Co. v. Northtown Industries* (1978), 58 Ill. App. 3d 625, 374 N.E.2d 1002), and should have been given an opportunity to purge himself prior to incarceration. Such a right is fundamental. See this court's comments in *White v. White* (1976), 41 Ill. App. 3d 758, 354 N.E.2d 486.

The second portion of the April 9, 1980, hearing concerned the order to show cause entered against Theresa Hess for refusal to allow Harmon visitation with the parties' minor children. According to the March 23, 1979, order entered subsequent to the dissolution of the Hess marriage, Harmon was given visitation rights every other weekend and alternate Wednesdays and holidays. He testified that he had last seen his children for a weekend in the first week of January 1980. He further testified that he had not seen his children at Christmas or Easter and that he had requested visitation privileges "quite a few" times from Theresa during the period from November 1979 until April 1980.

Harmon testified that he had requested to see the children every other weekend since the dissolution, but that on several occasions Theresa had indicated he could not see the children until he paid the past due child support. He said his visitation requests were made by telephone, between 9 and 11 a.m. on Thursday mornings.

Theresa Hess testified that Harmon had not called since January 17, 1980, to request visitation. She stated that he had visited with the children a total of nine times since the dissolution, and that he usually called requesting visitation on Thursday night or Friday morning.

Harmon had requested to see the children on Thanksgiving day, 1979. However, according to Theresa's testimony, he did not call until 11 a.m. Thanksgiving morning. By that time she had taken the children to

Harmon's mother's house since she had also requested to see the children that day. On cross-examination Harmon stated that he did not know Theresa had taken the children to his mother's on Thanksgiving, and that he first learned of the children's whereabouts when he visited his mother in the evening of Thanksgiving day. Theresa testified that Harmon called at 5 p.m. on Christmas eve and requested to see the children that night or on Christmas day, but she refused, saying she had already made plans.

On cross-examination Theresa testified that she told Harmon on two occasions that he could not see the children because he had not paid the child support. She stated that she had made no effort to accommodate Harmon with respect to visitation because it was not "her responsibility." Harmon claimed that he had called Theresa on several occasions to make arrangements for visitation but that she had not answered the phone.

The trial court found that the evidence failed to support a finding of willful contempt against Theresa Hess, citing the inadequacies of proof as to specific dates, times and places. The trial judge admonished Theresa Hess that if the parties had been adhering strictly to the alternate weekend scheme of child visitation, then a statement from her that she would not grant visitation because he was behind in child support would obviously be contemptuous because child support has nothing to do with visitation. Harmon Hess contends the trial judge's finding that Theresa Hess is not in willful contempt of court is against the manifest weight of the evidence. We cannot agree.

■■ Although it is true that visitation privileges should not be withheld as a reward or punishment to either parent, it is also true that a mere violation of visitation terms will not excuse the father's obligation to support his children. (See *Cooper v. Cooper* (1978), 59 Ill. App. 3d 457, 375 N.E.2d 925.) In the present case, we believe the trial judge acted properly in refusing to hold the petitioner, Theresa Hess, in contempt for refusal to allow Harmon visitation where the evidence was insufficient as to the specific dates, times and places that such refusal occurred. The pattern of visitation was so sparse that it would have been impossible to determine when the respondent did not see his children because of Theresa's comments as opposed to the numerous times he made no attempt at all to see his children. We note that the trial judge properly admonished Theresa Hess about refusing visitation in retaliation for nonpayment of child support, and we repeat the admonition that lack of payment has no bearing, *per se*, on visitation rights.

Insofar as the order appealed from finds the respondent, Harmon Hess, guilty of contempt for his wilful and contumacious refusal to pay child support and finds the petitioner, Theresa Hess, not guilty of contempt for her refusal to allow Harmon visitation, it is affirmed. That portion of the order sentencing the respondent to 10 days' imprisonment

without an opportunity to purge himself of contempt is reversed. The cause is remanded with directions for the entry of an order consistent with the views expressed in this opinion.

Affirmed in part, reversed in part and remanded with directions.

BARRY and SCOTT, JJ., concur.