AUDREY BEAR, Petitioner-Appellee, v. RICHARD ZUBATY, Respondent-Appellant (The Department of Public Aid, Intervenor-Appellee).

First District (6th Division)   No. 1—95—3757

Opinion filed March 31, 1997.—Rehearing denied May 27, 1997.

286

Law Offices of Steven D. Imparl, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Sharon Johnson Coleman, Robert F. Lyons, and Leonard N. Foster, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE ZWICK delivered the opinion of the court:

This is an appeal under the Revised Uniform Reciprocal Enforcement of Support Act (RURESA or the Act) (750 ILCS 20/11 (West 1994)). Petitioner, Audrey Bear, filed a petition in Florida against her former husband, Richard Zubaty (respondent). The petition sought an order for child support, medical coverage, and arrears against respondent, who had moved to Illinois. The Florida court submitted the petition to the Illinois circuit court for filing.

On March 20, 1995, in the circuit court of Cook County, both petitioner and respondent consented to an agreed order, requiring respondent to pay $80 per week in current child support for their two children and setting an arrearage in the amount of $13,677.40. The circuit court also entered an order of withholding against respondent on that date. The court continued the matter to May 10, 1995, to determine the payment arrangements for the arrearage.

On April 20, 1995, respondent filed a motion in the circuit court, requesting multiple forms of relief. Specifically, respondent sought (1) a stay of the agreed RURESA support order, (2) a protective order prohibiting harassment by petitioner, (3) an injunction requiring petitioner to provide respondent with full and unconditional access

to his children, and (4) an order impounding the child support payments until respondent was permitted such full and unconditional access. In the alternative, respondent moved for the circuit court to declare section 23 of RURESA unconstitutional. The Illinois Department of Public Aid, represented by the Illinois Attorney General, intervened in the proceedings.

On September 22, 1995, following a hearing on respondent's motion, the circuit court entered an order denying respondent the relief he had requested. The court determined it lacked subject matter jurisdiction over the issues raised by respondent and that the Florida courts were the appropriate forum to decide those issues. The court also denied respondent's request to declare section 23 of RURESA unconstitutional. The court ordered the establishment of a payment plan for the arrearage of $13,677.40. Respondent was ordered to pay $80 per week for current support, and $20 per week for arrearage. An order of withholding was also entered on that date.

Respondent filed his notice of appeal on October 20, 1995.

On appeal, respondent first contends the circuit court improperly denied his motion seeking injunctive and other relief. He claims the circuit court improperly denied him an evidentiary hearing on the issues raised in his motion.

■ The purpose of RURESA, formerly the Uniform Reciprocal Enforcement of Support Act (URESA) (see Ill. Rev. Stat. 1967, ch. 68, pars. 50 through 59), is to "extend by reciprocal legislation the enforcement of duties of support." 750 ILCS 20/1 (West 1994). RURESA was passed as "a mechanism by which an individual to whom a duty of support is owed (the obligee) can compel the person owing the duty (the obligor) to abide by it when absent from the jurisdiction in which the obligee resides without the [obligee] having to leave that jurisdiction to obtain enforcement." *People ex rel. LeGout v. Decker*, 146 Ill. 2d 389, 391, 586 N.E.2d 1257 (1992).

RURESA itself does not create a duty of support; rather, it provides a means by which to enforce a duty of support as it may exist under the law of the responding state. *Johnson v. Johnson*, 264 Ill. App. 3d 662, 636 N.E.2d 1013 (1994).

The RURESA multistate procedure begins with the obligee's filing of a RURESA petition in the appropriate court of the initiating state. 750 ILCS 20/14 (West 1994). Upon the filing of the petition, the initiating state court assesses whether the petition sets forth facts from which it can be determined that there is a duty owed and that the responding state may obtain jurisdiction of the obligor or his property. 750 ILCS 20/14 (West 1994). Once the initiating state court determines that further proceedings are warranted, the court

forwards the petition to the responding state court. 750 ILCS 20/14 (West 1994).

The responding state court, upon receipt of the RURESA petition, notifies the prosecuting State's Attorney, who is required to prosecute the case diligently, taking all action necessary to enable the court to obtain jurisdiction over the obligor, setting a time and place for hearing, and serving notice upon the obligor. 750 ILCS 20/17 (West 1994). The purpose of the RURESA hearing is to determine whether the obligor owes a duty of support, and the certified copy of the support order from the initiating state court constitutes evidence of such a duty. 750 ILCS 20/20, 20/23 (West 1994). If the responding state court finds that a duty of support exists, it "may order the obligor to furnish support or reimbursement therefor and subject the property of the obligor to the order." 750 ILCS 20/24 (West 1994). Additionally, an order for withholding must be entered separately at that time, which shall take effect immediately. 750 ILCS 20/26.1(B)(1) (West 1994).

In order to promote RURESA's purpose, the scope of RURESA jurisdiction is limited to issues involving child support. See *Paredes v. Paredes*, 118 Ill. App. 3d 27, 454 N.E.2d 1014 (1983) (holding that duty of support is paramount issue in URESA proceeding). The court in *Paredes* stated:

> "The goal to be achieved under URESA is to provide a separate and independent forum to promptly and expeditiously enforce the duty of support without allowing complex collateral issues to become involved." *Paredes*, 118 Ill. App. 3d at 30.

To that end, the various provisions of RURESA collectively limit the class of cases that the responding court has the power to hear.

First, RURESA states that remedies under the Act are "in addition to and not in substitution for any other remedies." 750 ILCS 20/3 (West 1994); *People ex rel. Gribbins v. Skopitz*, 135 Ill. App. 3d 76, 78, 481 N.E.2d 815 (1985). According to the Act, the RURESA petition is separate and distinct from prior or contemporaneous actions in related proceedings, such as dissolution of marriage, legal separation, adoption, or custody. See 750 ILCS 20/30 (West 1994) (stating that responding court shall not stay or refuse to hold RURESA proceedings due to the existence of a prior or pending action in this or any other state); *Rathmell v. Gardner*, 105 Ill. App. 3d 986, 987, 434 N.E.2d 1156, 1157 (1982).

Furthermore, section 23 of RURESA indicates that the responding court has no subject matter jurisdiction over issues of visitation or custody. 750 ILCS 20/23 (West 1994). Section 23 states in relevant part:

"The determination or enforcement of a duty of support owed to one obligee is unaffected by any interference by another obligee with rights of custody or visitation granted by a court." 750 ILCS 20/23 (West 1994).

The term "obligee" as used in this section refers both to the minor child and his or her custodial parent. See generally *In re Marriage of Ryall*, 154 Cal. App. 3d 743, 753, 201 Cal. Rptr. 504, 510-11 (1984); *Muller v. Muller*, 212 N.J. Super. 665, 670, 515 A.2d 1291, 1293-94 (1986).

Finally, consistent with the statutory limitation on subject matter jurisdiction expressed in section 23, section 32 of the Act states that participation in any RURESA proceeding does not subject a party to any court's jurisdiction in any other proceeding. 750 ILCS 20/32 (West 1994).

In applying these provisions of RURESA, the Illinois courts have consistently held that the responding state court is strictly limited with regard to subject matter jurisdiction and personal jurisdiction. In accordance with section 23 of RURESA, the courts have rejected the argument that the responding state court may consider collateral domestic relations issues, such as visitation, custody, or recoupment of support from the obligee in RURESA proceedings. *People ex rel. Winger v. Young*, 78 Ill. App. 3d 512, 397 N.E.2d 253 (1979) (visitation); *Rathmell*, 105 Ill. App. 3d at 987-88 (visitation); *Gribbins*, 135 Ill. App. 3d at 79 (recoupment raised as a counterclaim). In addition, pursuant to section 32, this court has rejected the argument that parties participating in RURESA proceedings thereby subject themselves to the personal jurisdiction of the responding court or in other independent proceedings. *Paredes*, 118 Ill. App. 3d at 32.

■ In sum, domestic relations matters that arise out of the original dissolution proceedings or require modification of the terms of the divorce decree must be litigated in a proceeding independent of a RURESA action, before a court that has subject matter jurisdiction and personal jurisdiction over those issues. See *Gribbins*, 135 Ill. App. 3d at 79. The Uniform Child Custody Jurisdiction Act (UCCJA) (750 ILCS 35/1 *et seq.* (West 1994)) is the uniform act that governs the interstate litigation of custody and visitation and dictates the proper forum in which to raise such issues. 750 ILCS 35/2 (West 1994); see also *Egan v. Bass*, 644 N.E.2d 1272, 1275 (Ind. App. 1994). UCCJA requires such proceedings to occur in the "home state" of the child. 750 ILCS 35/4 (West 1994). The "home state" is defined in UCCJA as the state in which the child has lived with his parent for at least six consecutive months immediately preceding the time involved. 750 ILCS 35/3.04 (West 1994).

■ In light of the limited nature of the personal and subject matter jurisdiction created by RURESA, and the overall legislative scheme embodied in both RURESA and UCCJA, we conclude that the circuit court properly determined Florida, rather than Illinois, is the appropriate forum in which to raise the allegations set out in respondent's motion.

Respondent recognizes that RURESA jurisdiction is limited in nature, but he argues that he has alleged in his motion tortious conduct by petitioner which exceeds interference with his visitation and custody rights. He claims that his ex-wife's interference with his right to maintain a relationship with his children is so outrageous as to not be preempted by section 23. In simplest terms, we do not agree with respondent's characterization. While attempting to couch his allegations as stating more than visitation interference, visitation is the crux of his claims, and such claims are not properly considered in a RURESA proceeding.

Respondent's reliance upon *Cooper v. Cooper*, 59 Ill. App. 3d 457, 375 N.E.2d 925 (1978), and *Weinert v. Weinert*, 105 Ill. App. 3d 56, 433 N.E.2d 1158 (1982), is misplaced. Neither of these cases involved RURESA proceedings. If respondent wishes to base arguments on the equitable and case-specific principles underlying those decisions, he must do so in the Florida courts that have proper jurisdiction to hear such matters. See Fla. Stat. § 61.14(1) (1985).

We turn to respondent's equal protection claims. Respondent argues that section 23 of RURESA denies him equal protection because noncustodial parents who live in Illinois and whose children live in Illinois have access to legal mechanisms to enforce their parental access rights, while he, as a RURESA respondent, cannot.

■ Illinois courts employ the same analysis in assessing equal protection claims under both the federal and state constitutions. *People v. Shephard*, 152 Ill. 2d 489, 605 N.E.2d 518, 523 (1992). When a challenge has been raised as to whether a statutory classification meets the requirements of equal protection, that classification must be presumed to be valid. *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 109, 566 N.E.2d 1283 (1990). Our supreme court has held that "in the absence of a fundamental right or suspect classification, the legislature may even differentiate between persons similarly situated if there is a rational basis for doing so." *Jenkins v. Wu*, 102 Ill. 2d 468, 477, 468 N.E.2d 1162 (1984). If the challenged legislation neither discriminates against a suspect class nor implicates a fundamental right, the rational basis test applies. *Jenkins*, 102 Ill. 2d at 477. Under that test, the statute must simply bear a rational relationship to a legitimate governmental interest. *Chicago National*

*League Baseball Club v. Thompson*, 108 Ill. 2d 357, 368, 483 N.E.2d 1245 (1985).

■ Whether section 23 of RURESA violates equal protection of the laws presents an issue of first impression in Illinois. Opinions by other state courts, however, which are instructive, have previously considered and rejected equal protection challenges to RURESA that are similar to the one now raised by respondent. *Egan v. Bass*, 644 N.E.2d 1272, 1274-75 (Ind. App. 1994); *Gambino v. Gambino*, 396 So. 2d 434, 438 (La. App. 1981); *Allsup v. Allsup*, 88 N.C. App. 533, 537, 363 S.E.2d 883, 885-86 (1988), *aff'd*, 323 N.C. 603, 374 S.E.2d 237 (1988); *Hammitt v. Howard*, 99 Ohio App. 3d 463, 467, 651 N.E.2d 20, 23 (1994); *Cuccia v. Cuccia*, 773 S.W.2d 928, 931 (Tenn. App. 1989).

First, we note that respondent, an obligor in a RURESA proceeding whose children live outside of Illinois, is not similarly situated with an Illinois noncustodial parent whose children do reside in Illinois. This is because the Illinois court does not have general jurisdiction over the obligee and the children, outside the narrow confines of the RURESA proceeding. 750 ILCS 20/32 (West 1994). In contrast, when the noncustodial parent and the minor children reside in Illinois, the custodial parent of the children, and thus the obligee, also would reside in this state. We therefore reject respondent's contention that he is "similarly situated" with other Illinois fathers who are permitted to raise collateral issues in support proceedings as was the case in *Cooper* and *Weinert*.

Moreover, Illinois has a legitimate state interest in enforcing child support obligations reciprocally and in a streamlined fashion, by allowing the custodial parent access to the courts in the obligor's state of residence. See *Egan*, 644 N.E.2d at 1274. The statutory scheme of RURESA, under which section 23 limits the subject matter jurisdiction and section 32 limits the personal jurisdiction, is reasonable and has a fair relationship to that goal. As the Ohio Court of Appeals stated in *Hammitt*:

> "Simply because the statute is written so that it limits the scope of matters within the jurisdiction of the court does not make it violative of equal protection. The limitations in the statute are reasonable in light of the purpose of URESA, which is to enforce support obligations." *Hammitt*, 99 Ohio App. at 468, 651 N.E.2d at 23.

Issues of custody, visitation, and other matters collateral to the support issue cannot be raised before the responding court in a RURESA proceeding simply because those questions have the potential to "cripple the interstate mechanism for enforcement of support obligations." *Egan*, 644 N.E.2d at 1274-75.

Respondent argues that the legislative scheme of section 23 of RURESA is not reasonably related to a legitimate state interest because the provision discourages him from paying support to children with whom he has no "real relationship." Respondent's argument, however, is insufficient to demonstrate that there is no rational relationship between the classification and the State's interests. His argument merely voices disagreement with the General Assembly's determinations regarding which competing interests in domestic relations disputes should be given priority, and it fails to show that section 23 is unconstitutional. See *Federal Communications Comm'n v. Beach Communications, Inc.*, 508 U.S. 307, 313, 124 L. Ed. 2d 211, 221, 113 S. Ct. 2096, 2101 (1993) ("[I]f there is any reasonably conceivable state of facts that could provide a rational basis for the classification," the statute must be upheld).

■ We turn to respondent's due process arguments which, we note, appear not to have been made in the trial court. See *People v. Sales*, 195 Ill. App. 3d 160, 161, 551 N.E.2d 1359 (1990) (failure to raise due process as issue in trial court results in waiver). In any event, putting aside issues of waiver, which we note are limitations on the parties only (*Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill. 2d 507, 514, 639 N.E.2d 1273 (1994)), we find respondent's due process arguments uncompelling.

Respondent argues that section 23 of RURESA, by precluding him from obtaining an evidentiary hearing on parental access, violates his rights to procedural due process under the state and federal constitutions. Specifically, he contends that he was improperly denied the right to conduct discovery and thereafter to present and examine witnesses at the RURESA proceeding regarding the issue of his access to his children.

Like respondent's equal protection challenge, the question of whether section 23 of RURESA deprives an obligor of procedural due process is an issue of first impression in Illinois. The courts of other states, however, have previously considered and rejected procedural due process challenges to RURESA that are similar to the ones now raised by respondent. *Dewar v. Le Nard*, 653 P.2d 82, 83 (Colo. App. 1982); *Hammitt v. Howard*, 90 Ohio App. 3d 463, 467-68, 651 N.E.2d 20, 23 (1994).

As we have discussed, respondent's motion raising matters collateral to support issues was properly rejected by the circuit court on jurisdictional grounds. Regardless of respondent's arguments on appeal that a full evidentiary hearing on his parental access rights would not "interfere with the legitimate interests of enforcing duties of support," he has failed to show that the lack of that hearing

violated his rights to procedural due process. In *Hammitt*, the Court of Appeals of Ohio considered a substantively similar issue and rejected the argument of unconstitutionality, stating:

"[A]ppellant has not been deprived of the companionship of his child without a fair process or procedure simply because the trial court did not address the issue of visitation. On the contrary, appellant may pursue his right to visitation in another action in another forum. No decision by the trial court in this case precludes appellant from being granted visitation and, thus, appellant has not had his due process rights denied with regard to visitation simply because the issue has not been addressed in conjunction with this case." *Hammitt*, 99 Ohio App. at 467, 651 N.E.2d at 23.

*Hammitt* is on point. The fact that section 23 of RURESA precludes respondent from obtaining a hearing on the collateral issues he wishes to raise in the Illinois courts does not deprive him of procedural due process under the state or federal constitution. As to the support order entered in Illinois, our review indicates that respondent received the process that was due, and as to the collateral issues, the procedures he seeks are available to him in Florida, the state where his ex-wife and children reside.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

GREIMAN, P.J., and QUINN, J., concur.