*In re* MARRIAGE OF LYNN MARIE HARTMAN, Petitioner-Appellee, and DAVID RAY HARTMAN, Respondent and Contemnor-Appellant.

Second District    No. 2—98—0743

Opinion filed June 8, 1999.

Patrick J. Sullivan, of Kruizenga & Sullivan, of Sycamore, for appellant.

James R. Buck, of Klein, Stoddard, Buck & Waller, of Sycamore, for appellee.

JUSTICE GEIGER delivered the opinion of the court:

The respondent, David Hartman, appeals from the May 12, 1998, order of the circuit court of De Kalb County finding him in indirect civil contempt of court for his failure to make court-ordered child support payments. On appeal, David argues that (1) the trial court was without subject matter jurisdiction to enter the contempt order; (2) the trial court improperly failed to give full faith and credit to a Florida court's determination of the amount of child support past due; and (3) the doctrine of *res judicata* prevented the trial court from entering the instant contempt order. We affirm.

The parties have filed a stipulation summarizing the proceedings before the trial court. On March 20, 1985, the trial court entered an order dissolving the five-year marriage between David and the petitioner, Lynn Hartman. The parties had one daughter during the marriage, Michelle, who was born on April 11, 1984. As part of the dissolution order, David was ordered to pay child support for Michelle in the amount of $85 per week.

In 1990, David relocated from Illinois to Florida. By 1997, David was substantially in arrears on his child support obligations. On September 9, 1997, Lynn initiated a child support enforcement action through the Illinois Department of Public Aid (IDPA). The IDPA thereafter filed a child support collection action on Lynn's behalf pursuant to the provisions of the Uniform Interstate Family Support Act (the Uniform Act) (750 ILCS 22/100 *et seq.* (West 1996)). The action was transmitted to the State of Florida for enforcement.

The Florida Office of Child Support Enforcement commenced an action against David for the determination and collection of past-due child support. David subsequently entered into a settlement agreement with the Florida Department of Revenue concerning the payment of child support. According to the settlement, David agreed to

repay a child support arrearage in the amount of $18,798.49, which had accrued between March 20, 1995, and July 29, 1997. David agreed to make payments on the arrearage in the amount of $5 per week. David also acknowledged his continuing obligation to pay child support in the amount of $85 per week.

On February 9, 1998, the circuit court of the Twelfth Judicial Circuit in Sarasota County, Florida, accepted this settlement agreement and adopted it as the judgment of the court. The Florida court specifically reserved jurisdiction regarding the "establishment and repayment of child support arrearage which may have accrued from August 1, 1997 through February 13, 1998." The court further reserved jurisdiction over the case "to enter such future orders as may be necessary to enforce [the] agreement."

On March 30, 1998, David filed a petition for modification of the judgment of dissolution in the circuit court of De Kalb County. In his petition, David alleged that he had moved to Florida to start a new business. David further alleged that his net income in 1997 was $8,495.94 and that he was self-insured for medical expenditures. David requested that his child support payments be reduced to $33 per week and that Lynn be required to provide medical insurance for Michelle.

On May 7, 1998, Lynn filed a motion for a rule to show cause why David should not be held in contempt of court for his failure to pay child support in compliance with the judgment of dissolution. The motion alleged that David was in arrears in the amount of $21,658.87 and that he had not paid his share of Michelle's uncovered medical expenses.

On May 12, 1998, the trial court held a hearing on David's petition for modification and Lynn's motion for a rule to show cause. As to the motion for a rule to show cause, David argued that the Florida court had already adjudicated the issue of child support and had retained jurisdiction with regard to the child support arrearage and its enforcement. David therefore argued that the trial court was required to give full faith and credit to the Florida court's judgment and had no jurisdiction to relitigate the issue or hold him in contempt. During the hearing, David presented the following documents: (1) the voluntary petition for collection of child support initiated by Lynn through the IDPA; (2) the complaint and summons filed and issued in Florida against David; and (3) the Florida court's order.

Lynn testified that David had ceased making regular child support payments since he moved to Florida in 1990. Therefore, Lynn sought the assistance of the IDPA to collect on the arrearage. Lynn testified that, after filing papers in Illinois, she heard nothing about the matter

until she began receiving child support payments in April 1998. As of May 12, 1998, Lynn had received child support payments totaling $633.90.

A certified copy of the child support records of the clerk of De Kalb County was introduced into evidence, showing a total arrearage of $22,292.77. Lynn testified that this document did not reflect the $633.90 in payments received in 1998. Lynn therefore requested judgment in the amount of $21,658.87 ($22,292.77 minus $633.90).

Following the hearing, the trial court determined that the child support arrearage was $21,658.87. The trial court found David in indirect civil contempt for his failure to pay child support and ordered that he be taken into the custody of the De Kalb County sheriff and held until such time as he could pay a purge amount of $4,000. The trial court additionally ordered that David pay $3,000 annually towards the arrearage through the clerk of the court, while at the same time abiding by all of the provisions of the judgment entered by the Florida court. The trial court also denied David's petition for modification.

In response to David's jurisdictional arguments, the trial court found that David had submitted himself to the court's jurisdiction by filing his modification petition, personally appearing in court, and agreeing to proceed with the hearing. Although the trial court acknowledged that the Florida court's judgment was valid, it explained that an Illinois court always retains jurisdiction to enforce its own orders through the use of its contempt powers. The trial court observed that, at a rate of $5 per week, it would take over 85 years to pay the arrearage in full. David subsequently filed a timely notice of appeal from the trial court's contempt order. However, David has not sought review of the trial court's denial on his petition for modification.

David's first argument on appeal is that the trial court lacked subject matter jurisdiction to adjudicate the child support arrearage or to use its contempt power to compel additional payments. David argues that, pursuant to the provisions of section 205(b) of the Uniform Act (750 ILCS 22/205(b) (West 1996)), exclusive jurisdiction of the controversy was transferred to the Florida court. We disagree.

■ The Uniform Act creates a mechanism which facilitates the reciprocal enforcement or modification of child support awards entered in Illinois and other states which have also adopted the Uniform Act. See 750 ILCS 22/601 et seq. (West 1996). Under the Uniform Act, the IDPA may file a petition seeking the enforcement of a child support award with the appropriate support enforcement agency in another state. See 750 ILCS 22/304 (West 1996). That agency, in turn, may file

an enforcement action in the courts of that state. See 750 ILCS 22/305 (West 1996). Florida is one of the states that has adopted the provisions of the Uniform Act. See Fla. Stat. Ann. §§ 88.011 through 88.9031 (West Supp. 1998).

■ Although the IDPA may initiate a foreign proceeding under the provisions of the Uniform Act, Illinois courts do not necessarily lose jurisdiction over child support matters that were originally adjudicated here. Indeed, under section 205(a) of the Uniform Act (750 ILCS 22/205(a) (West Supp. 1997)), an Illinois court that originally entered a child support award retains continuing, exclusive jurisdiction in regard to that order. Section 205(a) provides as follows:

"A tribunal of this State issuing a support order consistent with the law of this State has continuing, exclusive jurisdiction over a child-support order:

(1) as long as this State remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or

(2) until all of the parties who are individuals have filed written consents with the tribunal of this State for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction." 750 ILCS 22/205(a) (West Supp. 1997).

By preserving the Illinois courts' continuing jurisdiction over child support matters initiated here, the Uniform Act is in harmony with section 505(b) of the Illinois Marriage and Dissolution of Marriage Act (the Marriage Act) (750 ILCS 5/505(b) (West 1996)), which permits a trial court to utilize its contempt powers to ensure compliance with its support orders. The Uniform Act is also in harmony with the common-law principle that a trial court generally retains jurisdiction to enforce its own orders. See *Kelly v. Warner*, 119 Ill. App. 3d 217, 219 (1983).

■ Turning to the instant case, there is no question that both Lynn and Michelle continue to reside in Illinois. Nor is there any evidence that the parties have entered into a written agreement consenting to the transfer of jurisdiction over the case to another state. As such, under the plain language of section 205(a) of the Uniform Act, the trial court retained continuing, exclusive jurisdiction over the child support order it entered on March 20, 1985. Therefore, pursuant to section 505(b) of the Marriage Act, the trial court had the authority to exercise its contempt powers to require David to comply with the original order for support. See *Cooper v. Cooper*, 59 Ill. App. 3d 457, 467 (1978).

As David correctly notes, section 205(b) provides that an Illinois trial court may not exercise its continuing jurisdiction to modify a child support order issued by it when that order "has been modified

by a tribunal of another state pursuant to a law substantially similar to this Act." 750 ILCS 22/205(b) (West Supp. 1997). Additionally, section 205(c) provides that, in instances where a court in another state has modified an Illinois child support order, the Illinois court loses its continuing, exclusive jurisdiction with regard to the prospective enforcement of the original order entered in Illinois. 750 ILCS 2/205(c) (West Supp. 1997). David argues that the Florida court's order constituted a "modification" of the original child support order, which deprived the trial court of its continuing jurisdiction.

Contrary to David's characterization, however, the Florida court's order was clearly not a "modification" of the original Illinois child support order. The order entered by the Florida court did not change any of the original support obligations mandated by the trial court's March 20, 1985, order. Rather, the Florida court expressly recognized the validity of the March 20, 1985, order and declared that the order was "registered as an order enforceable in Sarasota, Florida." Pursuant to the terms of the original order, the Florida court ordered David to make ongoing support payments of $85 per week. Therefore, rather than "modify" David's support obligation, the Florida court instead sought to enforce the original order by requiring David to make weekly payments towards the arrearage. Lacking a "modification" of the original order, the Illinois trial court retained continuing, exclusive jurisdiction over its original child support order. 750 ILCS 22/205(a) (West Supp. 1997).

Additionally, we find it noteworthy that David's conduct during the proceedings below belies his jurisdictional argument on appeal. Although David now contends that the Florida proceedings deprived the trial court of jurisdiction over all child support matters, he did not select Florida as the forum to file his petition for modification in March 1998. Rather, he filed his petition with the Illinois trial court that had entered the original support order. It is therefore apparent that David believed that the Illinois trial court had retained exclusive jurisdiction over the child support order issued by it on March 20, 1985. We therefore believe that David's own conduct supports our conclusion that the Florida court did not modify the March 20, 1985, support order and that the Illinois trial court retained subject matter jurisdiction.

■ Moreover, we note that, even if the Florida court had modified the terms of the support order, the Illinois trial court would have nonetheless retained jurisdiction to enter certain orders pursuant to section 205(c) of the Uniform Act (750 ILCS 22/205(c) (West Supp. 1997)). Although modification deprives an Illinois court of jurisdiction with regard to the prospective enforcement of the order originally issued here, the Illinois court may nonetheless:

"(1) enforce the order that was modified as to amounts accruing before the modification;

(2) enforce nonmodifiable aspects of that order; and

(3) provide other appropriate relief for violations of that order which occurred before the effective date of the modification." 750 ILCS 22/205(c) (West Supp. 1997).

Therefore, even if the Florida court had modified the original March 20, 1985, support order, the Illinois trial court could have properly entered appropriate orders compelling David to pay the arrearage accruing prior to the modification. 750 ILCS 22/205(c) (West Supp. 1997).

David's next argument on appeal is that the trial court was obligated to give full faith and credit to the Florida court's judgment. David argues that the Florida order was a final judgment determining the total arrearage and setting a repayment schedule. David therefore contends that the trial court was precluded from adjudicating a different arrearage amount and setting a different repayment schedule.

■ The United States Constitution requires that each state give full faith and credit to the judicial orders of every other state. U.S. Const., art. IV, § 1. The general rule in applying this constitutional requirement is that Illinois courts must recognize orders entered by courts from other states, provided that the order was entered under proper personal and subject matter jurisdiction. See *People ex rel. Koelsch v. Rone*, 3 Ill. 2d 483, 485 (1954).

■ At the outset, we note that the trial court herein explicitly acknowledged the validity of the Florida court's support order. Indeed, the trial court's order specifically indicates that David "shall continue to make payments as ordered by the Circuit Court of the 12th Judicial Circuit for Sarasota County, Florida in case #98—148—CA—01 on 2/9/98." Therefore, the trial court has given full faith and credit to the Florida court's order by requiring David to comply with its payment terms.

The question therefore becomes whether the constitutional requirement of full faith and credit prevented the trial court from recalculating the arrearage amount and ordering that David make substantial additional payments towards the arrearage. We hold that it did not. Despite the Florida court's express reservation of jurisdiction to determine subsequent arrearage amounts, the Illinois trial court nonetheless retained continuing exclusive jurisdiction to enforce its earlier order of support pursuant to section 205(a) of the Uniform Act (750 ILCS 22/205(a) (West Supp. 1997)). At the time the trial court conducted its hearing, 40 weeks had passed since the date used by the Florida court in calculating the total arrearage. Under the terms of both the Illinois and Florida support orders, Lynn was owed

a total of $3,400 in additional support during this 40 weeks. At the hearing, Lynn testified that David had only paid $633.90. In light of such changed circumstances, and because the Florida court did not modify the support order, we hold that the principle of full faith and credit did not deprive the trial court of the authority to recalculate the total arrearage amount.

Nor do we believe that full faith and credit principles precluded the trial court from exercising its contempt powers under section 505(b) of the Marriage Act to enforce its own order of support. The trial court certainly had the jurisdictional authority to enter such an order pursuant to its continuing jurisdiction under section 205(a) of the Uniform Act (750 ILCS 22/205(a) (West Supp. 1997)). As noted above, the Florida court did not modify the original support order but instead sought to enforce the order through the registration procedures provided under article 6 of the Uniform Act (750 ILCS 22/601 *et seq.* (West 1996)). In light of David's continuing failure to abide by the trial court's original March 20, 1985, support order, the trial court had the authority to hold David in contempt of court and require that he make additional annual payments towards the arrearage. See *Cooper*, 59 Ill. App. 3d at 467.

■ We also reject David's contention that he is unfairly being subjected to the simultaneous jurisdiction of judicial systems in two separate states. Section 103 of the Uniform Act expressly provides that its remedies are "cumulative and do not affect the availability of remedies under other law." 750 ILCS 22/103 (West 1996). The Uniform Act therefore provides a separate remedy in addition to any enforcement proceedings brought in Illinois to seek the enforcement of a support order originally entered here. See *In re Marriage of Gifford*, 122 Ill. 2d 34, 39 (1988) (interpreting substantially similar language contained in the Revised Uniform Reciprocal Enforcement of Support Act (750 ILCS 20/1 (West 1996))). Additionally, we do not believe that David will be unfairly prejudiced by the enforcement of multiple support orders, as the Uniform Act explicitly provides for this situation. Specifically, the Uniform Act requires that all child support payments collected in another state for a particular period be credited against the amount owed for that same period pursuant to an Illinois child support order. 750 ILCS 22/209 (West 1996).

■ David's final argument on appeal is that the doctrine of *res judicata* prevented the trial court from recalculating the arrearage amounts and the appropriate repayment schedule. The doctrine of *res judicata* provides that a final judgment by a court of competent jurisdiction on the merits is conclusive of the rights of the parties and their privies and is a bar to any subsequent action on the same claim.

*Rhodes v. St. Charles Manufacturing Co.*, 149 Ill. App. 3d 821, 823 (1986). An order has a *res judicata* effect on a subsequent proceeding if there is (1) a final judgment on the merits; (2) identity of the parties or their privies; and (3) identity of claims or issues. See *People v. Kidd*, 398 Ill. 405, 408-09 (1947).

We do not believe that the conditions of *res judicata* have been satisfied by the instant case. First, the claims and issues in the instant proceeding were not precisely identical to the proceedings in Florida. During the time between the two proceedings, David did not fully comply with his support obligations and an additional arrearage accrued. On this basis alone, Lynn could assert additional claims for support that were not adjudicated during the Florida proceeding.

Second, identity between the parties at the two proceedings was also lacking. While Lynn was a party to the instant proceeding in Illinois, she was not a party to the Florida proceedings. Although it is true that Lynn contacted the IDPA for assistance in collecting support, the IDPA never made her aware of the proceedings initiated in Florida. The enforcement petition filed in Florida did not name Lynn as a party, nor did Lynn participate in any negotiations that may have precipitated the settlement. Lynn testified that she did not learn of the proceeding until she received a check from David in April 1998. Under such circumstances, Lynn cannot be considered privy to the Florida proceedings for purposes of *res judicata*. See *In re Marriage of Mesecher*, 272 Ill. App. 3d 73, 76-77 (1995) (enforcement proceeding initiated by IDPA did not establish privity of identity, and *res judicata* principles were inapplicable to subsequent enforcement action by mother). For all of these reasons, we hold that the doctrine of *res judicata* did not prevent the trial court herein from recalculating the arrearage and ordering additional payments on the arrearage.

For the foregoing reasons, the judgment of the circuit court of De Kalb County is affirmed.

Affirmed.

INGLIS and RAPP, JJ., concur.